## COMMONWEALTH v. COMLY.

The responsibility of a public receiver depends on his contract, and not on the law of bailment; and where that was to pay over the amount received, it is no defence by his surety that the money was stolen, though the jury find it was kept as a prudent man would keep his own funds.

In error from the Common Pleas of Northumberland county.

*July* 22.   Debt on bond of collector of tolls appointed by the Canal Commissioners of the Commonwealth, against one of his sureties.   The bond recited the appointment, and was conditioned that " he shall account for and pay over all moneys he may receive for tolls."

The plaintiff having proved the settlement of the account of the principal ; the defendant, under objection, gave evidence of a larceny of the moneys received for tolls from the desk of the collector, in the night-time.   The money had been deposited in a secret apartment of a locked desk in the collector's office.

The charge of his honour, (ANTHONY, President,) so far as the same was excepted to by plaintiff, was, if the jury believe that the collector did keep the public money as a prudent man would keep his

own, and exercised that care and diligence towards his clerks and servants engaged in performing the duties of his office, which every person of common prudence takes of his own affairs; and if the money belonging to the Commonwealth was actually stolen out of the desk in the office, as sworn to by the witness, then the verdict ought to be for the defendant.

The charge of the court as here stated, and the admission of the evidence, were the errors assigned.

*Hegins* and *Jordan*, for plaintiff in error, contended that the facts found by defendant did not constitute a defence; that to permit evidence of this kind to operate as a discharge, would be a temptation to public officers to commit the greatest frauds; that it is against public policy to permit such a defence to prevail; that the doctrine of bailment does not apply; that wherever there is an express contract, as there was in this case, it does not fall within the principle applicable to cases of bailment; that what is culpable negligence is a question of law, not of fact.

*Greenough*, for defendant in error.—The questions are, was the evidence admissible, and if admissible, was it properly left to the jury?

It is alleged that the money was abstracted without fault or negligence on the part of the defendant. The house in which the office was kept belonged to the Commonwealth, and the desk from which the money was taken was also the property of the state.

Elementary writers make no distinction between the keepers of public money and those having the custody of that of private persons.

No insurance or warranty in the bond against all losses. In the case of a lease, where the lessee covenants to deliver up the premises in good repair, and in the same order in which they were when he took possession, he is not liable for the destruction of the buildings by inevitable accident, although bound to pay the rent of the term.

Officers of the court having moneys in their hands, would not be liable under such circumstances. Story on Bailments, sec. 617, 620, p. 612.

Public officers having the custody of public money, are on the same footing with trustees of the funds of individuals. They do not come under the rule of common carriers, who are liable for all losses, except those which occur by the act of God or the public enemy.

2 I

The loss in this case must fall upon the Commonwealth.   24 Law Library, Lewin on Trusts, 152.

*July* 27.   GIBSON, C. J.—The opinion of the court in the case of the United States *v.* Prescott is founded in sound policy and sound law.   The responsibility of a public receiver is determined not by· the law of bailment, which is called in to supply the place of a special agreement where there is none, but by the condition of his bond. The condition of it in this instance was, to "account for and pay over" the moneys to be received; and we would look in vain for a power to relieve him from the performance of it.   True, there are many cases of relief against a legal right arising out of a contract; not one of which, however, bears even a remote resemblance to the present.   I know not a single instance of relief for hardship produced by misfortune, in the superinducement of which, the party insisting on his right had no agency.   It was for some time doubted, for it was not directly decided, whether a lessee could be relieved from payment of rent, without a stipulation for it in the lease, for destruction of the premises by fire; but it is definitively settled that he cannot.   Why there should have been a doubt of it at any time, it is hard to say; since it was never doubted by any one, except Lord Apsley, in Steele *v.* Wright, cited in Doe *v.* Sandham, 1 Term Rep. 708, that he is bound to rebuild by a covenant to repair, whether the destruction were by negligence, accident, or design.   A loss by a visitation of Providence, which no vigilance could prevent, would present a more meritorious claim to relief, one would be apt to think, than a loss by robbery, which is always preceded by a greater or less degree of negligence.   A receiver, or his surety, would come before a chancellor with an ill grace on that ground, even if there was a power to relieve him.   The keepers of the public moneys, or their sponsors, are to be held strictly to the contract, for if they were to be let off on shallow pretences, delinquencies, which are fearfully frequent already, would be incessant.   A chancellor is not bound to control the legal effect of a contract in any case; and his discretion, were he at liberty to use it, would be influenced by considerations of general policy.   The court ought therefore to have charged, that the defence attempted could not be sustained.

Judgment reversed, and a *venire de novo* awarded.