---

## Silas M. Baily et al., Plffs. in Err., v. Commonwealth of Pennsylvania.

It is one of the trusts and duties required by law of the state treasurer to account for and pay over to his successor all moneys received by him in his official capacity; and his failure to do so is a breach of the condition of his bond—that he "shall truly and faithfully perform all the trusts and duties enjoined and required by law"—even though the failure be caused by the insolvency of the bank in which without fraud or knowledge of its condition he has deposited the money.

Statutory provisions for taking security from banks of deposit do not relieve the treasurer from his primary liability.

In actions by the commonwealth on the official bonds of public officers affidavits of defense may be required.

(Argued June 1, 1887. Decided October 3, 1887.)

May Term, 1887, No. 30, M. D., before GORDON, TRUNKEY, CLARK, GREEN, and STERRETT, JJ. Error to the Common Pleas of Dauphin County to review a judgment for the plaintiff for want of a sufficient affidavit of defense in an action of debt. Affirmed.

NOTE.—For a full discussion of the liability of the state treasurer, where money is lost by the insolvency of a bank of deposit, see State v. Gramm, 7 Wyo. 329, 40 L. R. A. 690, 52 Pac. 533; State v. Foster, 5 Wyo. 199, 29 L. R. A. 226, 38 Pac. 926, and the cases referred to in the notes to the latter report.

The facts are sufficiently stated in the following opinion, delivered in the court below by Simonton, P. J., upon making absolute the rule for judgment:

This is an action brought by the commonwealth of Pennsylvania against Silas M. Baily, late state treasurer, and his sureties, on his official bond. At the end of his term of office he was in default in a sum exceeding $70,000; and this action is brought to recover this sum.

In answer to the action an affidavit of defense is filed, by Mr. Baily, on behalf of himself and sureties, which in substance sets forth that he and they are not liable, because the commonwealth had provided no vault for a safe-keeping of the public funds, and because it is to be inferred from the act of 1874, P. L. 124, and of 1876, P. L. 3, that the treasurer is not liable for the loss of moneys deposited in the manner referred to in said acts.

The affidavit further sets forth that the practice of the state treasurer, for the time being has been to make such deposits; that the bank in which the deposits were made, in this instance, was in good credit, and that defendant made careful inquiry, as to its standing and management, before the deposits were made; that the deposits were made in the name of the commonwealth, and were payable, on demand, by the bank; that no reward, gain, or profit accrued or was to accrue to the treasurer; that the bank failed in 1884, and, by reason of its failure, and for no other cause whatever, the defendant was unable to account for and pay the said money to his successor. That he took from said bank bonds in the name of the commonwealth with solvent sureties in an amount greater than said deposits; that he has brought suit against said bank, and the sureties on the said bonds, which has not been determined.

It was contended, on behalf of the defendants, that this is not an action in which an affidavit of defense can be required, by law, from the defendant. A comparison of the provisions of the act of April 16, 1845, § 12, P. L. 535; act of 1846, § 4, P. L. 413; act of April 21, 1857, § 3, P. L. 266; and act of April 7, 1862, § 1, P. L. 304,—shows clearly that an affidavit of defense is required to be filed in all actions brought by the commonwealth for the recovery of money; and a reference to these acts is all that is necessary on this point.

The only real question in the case is whether the treasurer and his sureties are liable upon his official bond for moneys de-

posited by him, as stated in the affidavit, and lost without fault or negligence on his part. There is much conflict of decisions on this question, many courts holding that public officers sustain the relation, merely, of bailees with respect to public moneys in their hands and are therefore not liable to account therefor, when it has been lost without negligence or fault on their part. This, however, is not the law in this state.

In Com. v. Comly, 3 Pa. St. 372, which was an action of debt on the bond of a collector of tolls, the defense was that the moneys had been stolen from the desk of the collector in the nighttime, and this was held by the court to be no defense to the action on the bond. Gibson, Ch. J., delivering the opinion of the court, said: "The responsibility of a public receiver is determined, not by the law of bailment, which is called in to supply the place of a special agreement where there is none, but by the condition of his bond. The condition of it in this instance was, to 'account for and pay' over the moneys to be received; and we would look in vain for a power to relieve him from the performance of it."

The condition of the bond in this case is "that if the above-bounden Silas M. Baily, state treasurer of the said commonwealth of Pennsylvania, shall truly and faithfully perform all the trusts and duties enjoined and required by law to be done and performed by such state treasurer, then this obligation to be void or else to be and remain in full force and virtue." It cannot be doubted that one of the trusts and duties required by law—whether by statute or at common law—of the state treasurer is to account for and pay over to his successor all moneys received by him in his official capacity. His failure to do so was therefore a breach of the condition of the bond.

As was said by Mr. Justice Strong, in Boyden v. United States, 13 Wall. 23, 20 L. ed. 529: "It is a settled rule that if the performance of an express engagement becomes impossible by reason of anything occurring after the contract was made, although unforeseen by the contracting party, and not within his control, he will not be excused."

And for reasons of public policy, as is further said in the same case, "the rule has been applied rigidly to bonds of public officers intrusted with the care of public money. Such bonds have almost invariably been construed as binding the obligors to pay the money in their hands when required by law, even

though the money may have been lost without fault on their part." In the case from which these quotations are made the receiver was held liable, although his failure to pay over the moneys was caused by the fact that he was "suddenly beset in his office, thrown down, bound, gagged, and that against all the defense he could make the money was violently and without his fault taken from him."

This case followed and affirmed United States v. Prescott, 3 How. 587, 11 L. ed. 738, which is also quoted and approved by Gibson, Ch. J., in Com. v. Comly, above referred to, where it was held to be no defense, even on behalf of the surety, that the money was stolen from the principal without any fault or negligence on his part, and we have not been referred to, nor can we find, any later case in this state modifying this doctrine.

The question is, therefore, not an open one for a court of the first instance in this state, even were it not supported by a mass of authorities elsewhere, a few of which are here referred to: United States v. Morgan, 11 How. 161, 13 L. ed. 646; United States v. Dashiel, 4 Wall. 182, 18 L. ed. 319; United States v. Keehler, 9 Wall. 83, 19 L. ed. 574; Bevans v. United States, 13 Wall. 56, 20 L. ed. 531; United States v. Thomas, 15 Wall. 337, 21 L. ed. 89; State use of Wyandot County v. Harper, 6 Ohio St. 607, 67 Am. Dec. 363; New Providence v. McEachron, 33 N. J. L. 339; Taylor v. Morton, 37 Iowa, 550; Union v. Smith, 39 Iowa, 9, 18 Am. Rep. 39; Halbert v. State, 22 Ind. 125; Morbeck v. State, 28 Ind. 86; Rock v. Stinger, 36 Ind. 346; Steinback v. State, 38 Ind. 483; Perley v. Muskegon County, 32 Mich. 132, 20 Am. Rep. 637.

It is contended, however, on behalf of defendants, that the provisions of the acts of 1874 and 1876, referred to in the affidavit of defense, imply that where the money is deposited by the treasurer in banks in good standing and security is taken in the name of the commonwealth therefor, the liability of the treasurer to account absolutely for the sums so deposited ceases. We do not think these acts were intended, or can properly be construed, to have this effect. They were intended simply to add to the security of the state by furnishing to the auditor general such information as would enable him, if necessary, to act as a check upon carelessness or neglect of the treasurer.

As the law has been declared, there remains for us no other

course than to direct judgment to be entered in favor of the commonwealth against the treasurer and his sureties for the penalty of the bond, with leave to issue execution for the amount appearing to be due from the copy of the account filed with the declaration; said amount to be liquidated by the prothonotary.

The assignment of error specified the action of the court in directing the judgment to be entered against the treasurer and his sureties for want of a sufficient affidavit of defense.

*Weiss & Gilbert* and *W. F. McCook,* for plaintiffs in error.— The bond to be given by the state treasurer is provided for by the first section of the act of May 9, 1874, P. L. 126, as follows:

"He shall become bound to the commonwealth in an obligation, with ten or more sufficient sureties, to be approved by the governor, in the sum of $500,000, conditioned for the true and faithful performance of the trusts and duties of his office."

The condition of the bond in suit is not copied from this act, but from § 40 of the act of March 30, 1811 (5 Smith, Laws, 237), which was supplied by the act of 1874.

Section 8 of the same act of 1874, P. L. 127, is as follows:

"Section 8. The state treasurer, on the first business day of each month, shall render a statement of account to the auditor general, giving in detail the different sums which go to make up the grand total of the amount on that day in the state treasury, exclusive of moneys appropriated to the sinking fund. Such statement shall include the names of banks, corporations, firms, or individuals with whom the public funds are deposited, with the various amounts of such deposits, the securities held by the state for the safe-keeping of the same, and the rate of interest received by the state on such deposits, and shall be verified by the oath or affirmation of the state treasurer, and recorded in a book kept for that purpose in the auditor general's office, and shall be open for the inspection of the governor, heads of departments, members of the legislature, or any citizen of the state desiring to inspect the same, and shall be correctly published in two newspapers at Harrisburg for general information."

Section 2 of the act of February 12, 1876 (supplementary to the act of 1874, before cited), is substantially the same as §

8 of the act of 1874, except that it relates to the sinking fund, and contains this additional provision:

"And each bank, corporation, firm, or individual with whom such moneys are deposited shall render on the first business day of each month an account to the auditor general corresponding to that of the state treasurer, giving the amount of such moneys deposited during the month, the amount then. on deposit, the rate of interest, if any, paid on such deposit, and the securities held by the state for the safe-keeping of such moneys."

These sections are identical with § 10 of the act of April 13, 1870 (P. L. 67), which applies to both the general fund and the sinking fund, and contained the provision last above quoted from the act of 1876, which was omitted from the act of 1874.

The general character of the office of state treasurer and duties of that office as to the receipt and care of public money, are nowhere described by the Constitution or by any act of assembly. It is an office created by the Constitution, and from time to time certain duties have been imposed upon the person filling it. Certain moneys are required to be paid to him; and provisions are made for payment by him; but it is nowhere expressly made his absolute duty to pay over to his successor the moneys remaining in the treasury or on the books of the treasury at the expiration of his term.

In Com. v. Comly, 3 Pa. St. 372, and indeed in nearly every case referred to by the court, the condition of the bonds sued on was that the officer should account for and pay over all moneys he may receive, etc.

How can an officer who has done with the money in his charge just what the law says he may do with it, and who has done nothing forbidden by law, be held responsible for a loss which has resulted, without any fault or negligence of his own?

*John F. Sanderson,* Deputy Atty. Gen., and *W. S. Kirkpatrick,* Atty. Gen., for the commonwealth, defendant in error.— When the state treasurer receives the money of the state into his possession he becomes a debtor of the state. He remains such debtor until he is discharged from his liability by payment, according to law, of the money received by him. Any sum remaining to his debit after payment of warrants, drawn by lawful authority, is payable to his successor in office or to any person lawfully demanding it at the instance of the state. The

condition of the bond, therefore, which requires that he shall truly and faithfully perform all the trusts and duties enjoined and required by law to be done and performed, clearly covers the duty in question, which is clear at common law, and which needs no declaratory statute for its definition.

The responsibility of a public receiver is determined not by the law of bailment, which is called in to supply the case of a special agreement, where there is one, but by the condition of his bond. Com. v. Comly, 3 Pa. St. 372.

The felonious taking and carrying away of public moneys in the custody of a receiver of public moneys, without any fault or negligence on his part, does not discharge him and his sureties, and cannot be set up as a defense to an action on his official bond. United States v. Prescott, 3 How. 578, 11 L. ed. 734.

The obligation to keep safely the public money is absolute, without any condition expressed or implied; and nothing but the payment of it when required can discharge the bond. Public policy requires that every depositary of the public money should be held to a strict accountability; not only that he should exercise the highest degree of vigilance, but that he should keep safely the moneys which come to his hands. Any relaxation of this condition would open a door to fraud which might be practised with impunity. Ibid.

There is an established difference between a duty created merely by law and one to which is added the obligation of an express undertaking. The law does not compel impossibilities; but it is a settled rule that if performance of an express engagement becomes impossible by reason of anything occurring after the contract was made, although unforeseen by the contracting party, and not within his control, he will not be excused. The rule has been applied rigidly to bonds of public officers intrusted with the care of public money. Such bonds have almost invariably been construed as binding the obligors to pay the money in their hands when required by law, even though the money may have been lost without fault on their part. Boyden v. United States, 13 Wall. 17, 20 L. ed. 527.

A police officer who receives public money is a debtor, an accountant bound to account for and pay over the money he has collected. The loss of his money, therefore, by theft or otherwise, is no excuse for nonperformance. This is founded on

500 BAILY *v.* COMMONWEALTH.

the nature of his contract and considerations of public policy. Hancock v. Hazzard, 12 Cush. 112, 59 Am. Dec. 171. See Thompson v. Township Sixteen, 30 Ill. 99; New Providence v. McEachron, 33 N. J. L. 339; Hennepin County v. Jones, 18 Minn. 199, Gil. 182; Redwood County v. Tower, 28 Minn. 45, 8 N. W. 907.

Where a clerk of a court is bound to account for and pay over all money received by virtue of his office, he is liable as an insurer at all events, or debtor, in respect to such money, and can only be relieved by payment. Whether the clerk deposited the money in bank to his own credit, or to his credit as clerk, makes no substantial difference. Havens v. Lathene, 75 N. C. 505. See also Lowry v. Polk County, 51 Iowa, 50, 33 Am. Rep. 114, 49 N. W. 1049; Ross v. Hatch, 5 Iowa, 149; State *ex rel.* Mississippi County v. Moore, 74 Mo. 413, 41 Am. Rep. 322; Taylor v. Morton, 37 Iowa, 550; State *ex rel.* Bladen County v. Clarke, 73 N. C. 255; Clay County v. Simonsen, 1 Dak. 403, 46 N. W. 592; Inglis v. State, 61 Ind. 212; United States v. Watts, 1 N. M. 553; Hart v. Pittsburgh, 81* Pa. 466; Union v. Smith, 39 Iowa, 9, 18 Am. Rep. 39; Perley v. County of Muskegon, 32 Mich. 132, 20 Am. Rep. 637; Swartwout v. Mechanics' Bank, 5 Denio, 555; Commercial Bank v. Hughes, 17 Wend. 100; State *ex rel.* The Twp. v. Powell, 67 Mo. 395, 29 Am. Rep. 512. See also Ward v. School Dist. No. 15, 10 Neb. 293, 35 Am. Rep. 477, 4 N. W. 1001; Jefferson County v. Lineberger, 3 Mont. 231, 35 Am. Rep. 462; Wheeler v. Hambright, 9 Serg. & R. 390.

*Weiss & Gilbert* and *W. F. McCook,* in reply.—Had the bond of General Baily, or the acts of assembly relating to the office of state treasurer prescribed that he shall truly and faithfully perform the duties of his office, and pay over all moneys received by him, then United States v. Prescott, 3 How. 587, 11 L. ed. 738, and Com. v. Comly, 3 Pa. St. 372, would be decisive. But in this case it is otherwise. This distinction is clearly drawn in United States v. Thomas, 15 Wall. 337, 21 L. ed. 89, in which it is held that a collector or receiver of public funds is a bailee at common law, and only liable for negligence or dishonesty, unless a measure of enhanced accountability can be found in his official bond or the policy of the acts of Congress on the subject.

OPINION BY MR. JUSTICE STERRETT:

It appears to be a harsh measure of justice to hold that the treasurer and his sureties are liable on his official bond for the money deposited under the circumstances disclosed in the affidavit of defense, and subsequently lost without his fault or negligence; but it is impossible to reach any other conclusion without ignoring the authority of well-considered cases cited and relied on by the learned president of the common pleas.

The only question presented by the record is so fully considered by him in his opinion that further elaboration is unnecessary. In view of the authorities referred to, and for the reasons there given, we are constrained to say that there is no error in the judgment.

Judgment affirmed.