## Potter County, Appellant, *v.* Page.

*Public officers—County treasurer—Interest on deposits—Liability to account.*

1. Where a county treasurer deposits public moneys in banks in his own name as treasurer, and the banks at stated intervals credit these accounts with interest, the treasurer has no authority to draw the interest from the official accounts and deposit it in his own personal accounts in the same banks.

2. Public moneys when received by the proper official do not im-

mediately, and thereupon become wholly and absolutely his private property to be used and disposed of by him solely according to his own pleasure, saving only the ordinary liability of a debtor to have them forthcoming to meet the obligation of his bond.

Argued Oct. 31, 1912. Appeal, No. 203, Oct. T., 1912, by plaintiff, from judgment of C. P. Potter Co., June T., 1911, No. 150, for defendant on case stated in suit of Potter County v. Henry E. Page. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Case stated to determine liability of a county treasurer for certain moneys claimed by him as his own. Before ORMEROD, P. J.

The facts were agreed upon as follows:

(1) That Henry E. Page was the duly elected and qualified treasurer of the county of Potter, for the year 1910 and gave bond for the performance of his official duties, as required by law, which shall be considered in evidence, as recorded in Misc. Records "I" at page 594.

The giving of the bond and its recording is admitted as a fact by counsel for plaintiff, but its relevancy in this issue is not admitted.

(2) It is admitted that the commissioners and county auditors fixed the commission or compensation of the county treasurer for the year 1910, according to law; such commission being fixed at the rate of two and one-half per cent on all funds except county and poor bond; one per cent on these.

This is admitted as a fact by counsel for defendant, but the relevancy in this issue is denied.

(3) That Henry E. Page, during the year 1910, had accounts in the First National Bank of Coudersport, in the name of Henry E. Page, treasurer; the Citizens' Safe Deposit & Trust Company of Coudersport, in the name of Henry E. Page, Treasurer; and in the Bank of Austin, in the name of Henry E. Page, county treasurer.

That the said Henry E. Page deposited the funds paid to him as county treasurer in said banks where the moneys were credited to said accounts.

(4) It is admitted that in the regular course of business and according to the usual custom of the several banks and without special agreement with the said Henry E. Page, interest was credited to the accounts, for the year 1910, in the following aggregate amounts:

<blockquote>
a—Bank of Austin . . . . . . . . . . . . . . . .$115.50<br>
b—Citizens' Safe Dep. & Trust Co. . . . 600.08<br>
c—First National Bank . . . . . . . . . . . . 179.83<br>
              Total,        $895.41
</blockquote>

(5) It is further admitted that Henry E. Page made no entry of the receipt of the above stated sums of interest on his books in the treasurer's office, and made no report thereof to the county auditors or commissioners.

(6) That Henry E. Page, from time to time during the year 1910, drew checks upon the account in the name of Henry E. Page, treasurer, to Henry E. Page, for the amount of interest so credited to the several accounts, which said checks were paid to Henry E. Page by credit to his personal account, and that all of the said checks were drawn upon the Citizens' Safe Deposit & Trust Company account, with the exception of one which was drawn upon the account in the First National Bank.

(7) It is admitted that prior treasurers of Potter county have received, prior to the year 1910, certain amounts of interest in like manner.

This is admitted as a fact, but its relevancy is denied by counsel for plaintiff.

(8) That the fact the various banks had credited the above mentioned total of $895.41 of interest to the various accounts of Henry E. Page, treasurer, was proven before and known to the board of auditors prior to the time their report was filed for the year 1910.

The court entered judgment for defendant on case stated.

*Error assigned* was in entering judgment for defendant on case stated.

*W. K. Swetland*, with him *W. F. Dubois*, for appellant.— The moneys paid into the treasurer's accounts were not the moneys of the treasurer: Com. v. Mentzer, 162 Pa. 646; Com. v. Morrisey, 86 Pa. 416; Com. v. Marcer, 29 Leg. Int. 52; Com. v. Carson, 21 Pa. Superior Ct. 48; Com. v. House, 6 Pa. Superior Ct. 92; State v. McFetridge, 20 L. R. A. 223; Adams v. Williams, 30 L. R. A. (N. S.) 855.

*Archibald F. Jones*, with him *W. I. Lewis, R. R. Lewis* and *Lytle F. Perry*, for appellee.—We submit that a county treasurer under all the authorities is a debtor and not a trustee: Com. v. Comly, 3 Pa. 372; Nason v. Poor Directors, 126 Pa. 445; Com. v. Baily, 129 Pa. 480.

It has been held in many other jurisdictions that a treasurer or receiver of public funds is a debtor and not a bailee: Shelton v. State, 53 Indiana, 331; Hancock v. Hazard, 66 Mass. 112; Railroad National Bank v. Lowell, 109 Mass. 214; Perley v. Muskegon County, 32 Mich. 132; New Providence v. McEachron, 33 N. J. L. 339; State v. Harper, 6 Ohio St. 607; McLeod County Comm.'s v. Gilbert, 19 Minn. 214; Union Township v. Smith, 39 Iowa, 9; Tillinghast v. Merrill, 151 N. Y. 135 (45 N. E. Repr. 375).

The county treasurer is not a bailee of the public moneys, but a debtor therefor, and, therefore, he was not liable for interest on public moneys deposited by him in the bank: Shelton v. State, 53 Ind. 331; Com. v. Godshaw, 92 Ky. 435 (17 S. W. Repr. 737); Maloy v. Bernalillo County Commissioners, 10 New Mexico, 638 (62 Pac. Repr. 1106); Wilkes-Barre v. Rockafellow, 171 Pa. 177; Com. v. Moore, 7 Dauphin County, 103; Albany County Supervisors v. Dorr, 25 Wend. 440.

OPINION BY HEAD, J., April 21, 1913:

The appellee, Page, was the duly elected qualified and

acting treasurer of the county of Potter. The official bond which he had given was in exact conformity with the provisions of sec. 33 of the Act of April 15, 1834, P. L. 537. We quote the section: "Each county treasurer shall give bond with sureties, &c., conditioned for the faithful performance of the duties of his office, for a just account of all moneys that may come into his hands on behalf of the county, for the delivery to his successor in office of all books, papers, documents and other things held in right of his office, and for the payment to him of any balance of money belonging to the county remaining in his hands." At the regular audit of his official account for the year 1910 he was surcharged by the report of the auditors with the sum of $895.41 which had been received by him in the manner hereinafter stated. From this report he appealed to the court of common pleas. That court directed the framing of an issue for the trial of the questions raised by the appeal. Thereafter an agreement as to the material facts, in the nature of a case stated, was signed and filed and the matter submitted to the court without a jury. The learned judge below entered judgment for the defendant and from that judgment this appeal by the county was taken.

It appears from the facts agreed upon that during the year 1910 the appellee kept deposit accounts in three banks in the name of Henry E. Page, treasurer, or county treasurer, and that he deposited the funds paid to him as county treasurer in the said banks where they were credited to the said accounts. It further appears that he also kept personal accounts in the same banks in his own name in which he deposited his individual funds. During the year 1910 there was paid in and credited to the official treasurer's accounts designated, the sum of $895.41 which is the subject of this controversy. This money the treasurer withdrew from the official account by checks, duly signed by him as treasurer or county treasurer to his own order, and these were redeposited by him in his individual account. The proceeds, thus mingled with his private

moneys, were thereafter used and controlled by him as his own. The only direct light as to the source whence this money came and the reason for its payment is to be found in the following quotation from the facts agreed upon: "It is admitted that in the regular course of business and according to the usual custom of the several banks and without special agreement with the said Henry E. Page, interest was credited to the accounts (i. e., the official accounts) for the year 1910 in the following aggregate amounts, . . . . total $895.41."

From the careful opinion filed by the learned judge below it appears that he regarded the conclusion reached by him as the necessary result of the application, to the facts on the record, of the principles declared in Com. v. Comly, 3 Pa. 372; Nason v. Poor Directors, 126 Pa. 445; Com. v. Baily, 129 Pa. 480, and Wilkes-Barre v. Rockafellow, 171 Pa. 177. We must at once agree that these cases have indubitably established the proposition that the liability of a public officer, appointed or elected, to collect, safeguard and disburse, in the manner provided by law, public moneys, and who has given security of the character of that given in the cases cited and in the present case, is not merely that of a bailee or trustee. Hence it was held in those cases that neither the officer nor his sureties could successfully defend the claim of the state or other municipality for the performance of the obligations imposed on him or them by the law and the covenants of his bond, by setting up that the money committed to his custody had been lost without any fault or negligence on his part. We cannot regard that principle as of controlling force in the disposition of the present case. It does not appear in this case that any money has been lost. This is not an action on the bond against the principal and his sureties. But even if it were, the real controlling question here, as we view it, is outside of the principle referred to.

Whilst it is true that the officer in such cases becomes the debtor of the state or municipality rather than its

bailee or trustee; and while he is therefore given the individual control of the moneys received by him, we are not prepared to go the length of saying that, immediately upon the receipt by the officer, by virtue of his office, of any sum or sums of money, such moneys become in every respect his private personal property, subject to all of the incidents that attach to private property in the possession of its owner. If such theory were correct, it would follow that the funds in the hands of a county treasurer, for instance, deposited in the bank in his official account, would be subject to attachment and execution for his private debts. In case of his death while in office, the fund would necessarily go to his administrator rather than to his successor and be subject to all of the laws regulating the administration and distribution of the estates of individuals in the orphans' court. No such far reaching doctrine, as we view it, logically or necessarily follows from the cases cited. In Com. v. Comly, 3 Pa. 372, it was held that a collector of tolls, appointed by the canal commissioners, who had given his bond to account for and pay over all the moneys received for tolls, could not be excused from his obligation so to do by reason of the fact that the moneys, while in his custody, had been stolen from the secret apartment of a desk where he was accustomed to keep them. In Com. v. Baily, 129 Pa. 480, the court again determined the single proposition that the defendant, who had been state treasurer and given a bond with a similar obligation, could not be excused from the liability to account because one of the depositories, selected by him with all reasonable diligence and care, had become insolvent and unable to return the deposit.

In Wilkes-Barre v. Rockafellow, 171 Pa. 177, the record presented more than the single question disposed of in the preceding cases. In that case Rockafellow was the city treasurer. He had agreed not only that he would safeguard and disburse, according to law, all moneys received by him, by virtue of his office, but that he would also pay interest at an agreed upon rate on the daily balances of

that fund in his hands. He was at that time widely engaged in the banking business and subsequently became insolvent. He had never paid the interest which he had agreed to pay although that duty was not cast upon him by any law, and his obligation so to do was unknown to his sureties. It was held by the Supreme Court that his sureties could not be held liable for that unexecuted undertaking because the money had never reached the public treasury and was not within the scope of the obligation of the bond. But it was further held that, as to the money borrowed by him from the sinking fund commissioners, on which he had paid interest for eight years, "The interest having been paid by him as borrower to himself as city treasurer, was as to himself and his sureties in the treasury. For this he was liable to account. His failure to pay it over to his successor was a breach of his official duty and for such breach of official duty his sureties were liable on their bond. They were liable not because it was interest due from him to the city, but because it was interest received by him as city treasurer from a borrower from the sinking fund commissioners."

Moreover, if, as soon as the public revenue is received by the proper officer, we are to hold that in every respect it becomes simply his private property because he is in the attitude of a debtor to the state and liable to account for it, we would find ourselves in a situation where it would be difficult to ascribe any rational meaning to a number of statutes, both civil and criminal, from time to time enacted by the legislature. These acts make very marked distinctions between the funds collected and received by a public officer by virtue of his office and his individual property. We have already observed, in the quotation from the act of 1834 requiring the county treasurer to give a bond, that one of its conditions is to secure the payment by him to his successor of any balance of money belonging to the county remaining in his hands. Section 63 of the crimes act of March 31, 1860, P. L. 382, provides, "If any such officer (of any city, borough, county

or township) shall enter into any contract or agreement
with any bank, corporation or individual . . . . by which
said officer is to derive any benefit, gain or advantage
from the deposit with such bank, corporation or in-
dividual, of any money or valuable security held by him
or which may be in his possession or under his control by
virtue of his said office, he shall be guilty of a misdemeanor,
&c." Other sections of other statutes might be cited
which tend further to confirm the view that public moneys
when received by the proper official, do not immediately
and thereupon become wholly and absolutely his private
property to be used and disposed of by him solely accord-
ing to his own pleasure, saving only the ordinary liability
of a debtor to have them forthcoming to meet the obliga-
tion of his bond.

But again we are not confronted here with any attempt
on the part of the county to recoup from its official, money
which he had individually received as interest on the
public deposit. Our proposition is just the converse of
the one stated. Where money has been actually paid
into the county treasury by a third party, either as a
gratuity in recognition of the benefits received from the
public deposit, or by way of gain or compensation for
the same purpose, may the county treasurer, who has the
control of that fund, withdraw such money from the
treasury and put it in his own pocket and claim immunity
from any liability to account, because the county could
not collect from him interest on the money in his hands?
If he may successfully do this, he may do indirectly that
which it would have been a misdemeanor for him to do
directly as the result of a contract made by himself.

Keeping in mind then precisely the facts disclosed by
this record, we observe first that Henry E. Page, the
individual, has shown no claim whatever to the money
he has withdrawn from the official account. He has de-
clared in the case stated that it arose from no contract
made by him. The bankers who paid it knew the account
on which they did pay it, and they knew precisely the

different functions of the official account and the private account in their banks. Presumably they intended to do exactly what in effect they did. They paid it into the account in which the county treasurer "deposited the funds paid to him as county treasurer." In other words, they paid that money into the county treasury. The defendant, if that money did not belong to him, has no concern whether it arose out of a contract which could or could not be enforced at law. If it were a pure gratuity to the account, which he received only by virtue of his office, we cannot see the source of any right in him to take that money from the treasury where it had been lodged and appropriate it to himself. The payment of that money into the official bank account of the treasury and its credit there, made out a prima facie case of his liability to account for it. Certainly it would not be conclusive against him. It would be entirely competent for him to show that such payment was the result of an accident or mistake; that the money belonged to him as an individual and was intended to be applied to his own individual account. No facts upon which to base any inference of that kind appear in the case stated. There is nothing to destroy the ordinary presumption that the payment was made, as it was intended to be, into the official account, or practically into the county treasury. In the absence of such showing by him, that presumption remains and was a sufficient warrant for the action of the auditors in surcharging him as they did.

We deem it proper to say that the record discloses no intention on the part of the treasurer to misapply what he believed to be the money of the county. But we are forced to the conclusion that, under the facts stated, the learned judge below should have followed the action of the county auditors and entered judgment in favor of the plaintiff.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment for the plaintiff in the sum agreed upon.