## Controller's 52nd Annual Report.

*Public officers—Sheriffs—Audit of accounts—Conclusiveness of audit— Interest on deposits—Fees.*

1. The county controller's audits of the accounts of the sheriff are, in the absence of fraud, final and conclusive after the lapse of time allowed for appealing therefrom as to all matters which might have been contained in them.

2. A county cannot claim interest allowed and paid over to a sheriff by a bank on moneys belonging to litigants deposited in the name of the sheriff. The county, however, may claim the interest earned on the deposit of fees belonging to the county. The mere fact that the sheriff does not keep a separate account of the moneys of the county and of the moneys of litigants does not entitle the county to claim all the interest accruing on the whole account.

3. The sheriff of Allegheny county is not chargeable with the sum of $2.50 for the use of the county in each case of interpleader, and of appraisement under the exemption act.

4. The county of Allegheny is not entitled to the moneys paid to a deputy sheriff for serving copies of plaintiff's statements in civil cases.

Argued Oct. 29, 1914. Appeal, No. 32, April T., 1915, by Allegheny Co., from judgment of C. P. Allegheny Co., April T., 1913, No. 292, on appeal in the matter of the 52nd Annual Report of the Controller of Allegheny County. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Appeal from controller's report.

SHAFER, J., filed the following opinion:

The controller having surcharged the sheriff with a large number of items on various accounts and the sheriff having appealed therefrom, the questions of fact involved being such as require a trial by jury, the parties concerned have entered into an agreement that the court should pass upon certain questions involved, before the trial, as if upon a demurrer to a statement containing the charges setting out at length the questions to be determined. There are substantially four different matters of law in dispute between the parties, to be passed upon under this agreement, which are (1) the effect of the audits for the two preceding years; (2) the ownership of interest on daily balances; (3) the amount of costs collectible and payable by the sheriff in certain appraisements; and (4) the costs of service of statements with summons.

In the report appealed from for 1912 the controller

has charged a large number of items of receipts by the sheriff in the years 1910 and 1911, before the audit in each of those years, which were not contained in that audit; and it is claimed by the appellant that the audits of 1910 and 1911 were final and conclusive after the lapse of time allowed for appealing therefrom, as to all matters which might have been contained in them. This position we do not understand to be seriously disputed. It is stated in the case of Spyker v. Wible, 236 Pa. 380, that the county auditors, whose place is taken in this county by the controller, have no authority to reopen the accounts for the years prior to the preceding year and to reaudit and readjust them. We are therefore of opinion that the appeal must be sustained as to all items charged against the sheriff for the years 1910 and 1911. This the county does not deny to be the rule of law, but it is suggested that the rule does not apply where fraud has been used by the officer to prevent discovery of the charges omitted, and there can be no doubt that for such fraud the audits of the previous years might be opened and the county allowed to appeal therefrom, but in this case no such fraud appears. There appears no good reason why the matters claimed herein should not have been as easily known in 1910 and 1911 as they were in 1912, and no device or concealment on the part of the appellant is made to appear. All that is suggested is that he did not charge himself with the items complained of. That having been done by him under a claim of right, it could not amount to fraud.

The appellant was charged, by the controller, for the year 1912, with a considerable sum received by him from his bankers as interest on daily balances, the account consisting principally of money received by him on executions placed in his hands, and partly of fees paid to him as sheriff and not yet paid over to the county. The county claims that this interest should be paid over to it by the sheriff, principally under the provisions of

the Act of March 31, 1876, P. L. 13, being an act to carry into effect sec. 5, art. XIV of the constitution, providing salaries for county officers in certain counties and providing for the payment of fees received by them into the county treasury; and it is also suggested by counsel for the county that the sheriff may be deemed to be a bailee or trustee for the county for at least part of these moneys. The object of the provision of the constitution above mentioned, and of the act to carry it into effect, was to give to the counties instead of the officers the advantage of the increase in fees brought about by an increase of business and population, and further, to take away the personal interest of the sheriff in those fees, which was a fruitful source of dispute with litigants. The act therefore, in sec. 1, provides that "all fees limited and appointed by law to be received by each and every county officer . . . . or which they shall legally be authorized, required, or entitled to charge or receive, shall belong to the county," and shall be paid over by the officer of the county. If there were nothing further in the act it would be very plain that money received by the sheriff from his bankers as interest would not be within the act, as it is not a fee appointed by law or which he was authorized or entitled to charge. On the contrary, he would be guilty of a misdemeanor if he received such interest on a contract to that effect, under the criminal code. It is claimed, however, that the language of sec. 15 of the act is sufficient to entitle the county to the money in question. That section provides that all "moneys, fees, mileage or perquisites received by any of them as compensation fees or perquisites, from any source whatever, shall in all cases belong to the county. We are clearly of opinion, however, that these words are intended to be an elaboration of the word "fees" used in sec. 1, and that the "moneys, fees, mileage and perquisites" mentioned in sec. 15 can mean only such as are limited and appointed by law, or which the officer shall be legally entitled to charge or

receive.   It cannot be supposed that the legislature intended to direct the officer to pay. to the county money received by him contrary to law, or without lawful authority to collect the same.   We are therefore of opinion that the moneys received by the sheriff as interest from his bankers are not within the terms of the constitution or the act of 1876.

It is claimed, however, that this money belonged to the county because it accrued to an account part of which at least belonged to the county.   It was held by the Superior Court in the case of Potter County v. Page, 53 Pa. Superior Ct. 268, that moneys which accrued in this way to an account of a county treasurer, kept in bank as such, belonged to the county.   The court there discusses the somewhat delicate question of whether a county · treasurer, or similar officer, is a bailee of moneys of the county or a, debtor to the county, or whether he does not occupy some intermediate position. If he were an ordinary bailee he would not be liable for the money if it were lost without his fault; if he were an ordinary debtor the money might be attached in the hands of his banker for his private debt; yet neither of these statements is true.   It may perhaps be said that he is a bailee, but bound as an insurer by reason of the terms of his bond and the provisions of the law under which he is appointed.   The Superior Court therefore held that as the money was credited voluntarily by the bank, to an account opened by the officer as county treasurer, the money thereby became a part of that account and the treasurer could not check it out for his own use.   The money in the bank having been collected by the treasurer for the county, and earmarked as money of the county by his mode of deposit, the county had standing to prevent the treasurer from paying it out for his own debts, his creditors from attaching it for such debts, and, as one remedy for the recovery of its money, to demand it against the bank in a proper proceeding.   In the present case the moneys in the

bank were principally moneys to which the county had no claim whatever, being the proceeds of executions which were payable to the plaintiffs and others on distribution made according to law.   On such moneys the county can have no claim for interest on the ground of the sheriff being a bailee of its money.   As to the sums which the sheriff had in his hands as fees which he was bound to pay over to the county from time to time, the case of Potter County v. Page would appear to be applicable, and the surcharge for interest made by the controller is good to that extent.   It is urged by the county that as the sheriff did not keep a separate account of these items the county is entitled to the whole of the interest, on the principle of confusion of books.   As there can be no difficulty, however, in ascertaining how much fees the sheriff had on hand from time to time, there can be no difficulty in determining how much of the interest allowed by the bank accrued on those fees.

The controller has charged against the appellant the sum of $1.50 in each case of appraisement under the sheriff's interpleader act, the sheriff having paid only $1.00 in each of those cases and the claim of the county being that the matter is regulated by the Act of 1873, P. L. 496, which provided that in cases of interpleader and appraisement the sheriff will charge and receive for the use of the county a fee of $2.50 in each case. The contention of the appellant is that that act was repealed by the fee bill of 1887, applying to counties of over 300,000 inhabitants.   By that act it is provided that: "All former acts fixing the fees of the sheriff or officers under him, so far as the same are to be paid or charged against parties or suitors, are hereby repealed.   We are clearly of opinion that this repeals the act of 1873, although the act of 1887 contains no provision for fees for appraisements.   The repeal is not of all acts inconsistent therewith, but of all acts fixing fees.   It has been held by this court that this act of

1887 is in force in this county. The sheriff's interpleader act itself provides for an appraisement, and fixes the cost of an appraisement at $4.00. None of these acts fix the number of appraisers nor their compensation, or say anything about their compensation except the act of 1901, which says the $4.00 charged shall include their compensation. The only statutory provision which has been pointed out to us as to the number of appraisers and their compensation is contained in the act of April 10, 1848, part of which was extended to the whole state by the act of March 10, 1858, which authorizes the court to provide for the cost of interpleaders and to make rules in regard to them. The contention of the appellant is that this act of 1858 is still in force, and that it is the duty of the court to regulate the matter, except that the cost of the appraisement is fixed by the interpleader act at $4.00, the number of appraisers and the compensation of each being left to the discretion of the court. While it is not claimed that any definite order was made as to this matter by the court, the practice has long continued to employ three appraisers, the appraisements so made having always been approved by the court; and what the sheriff in fact did was to pay each of these appraisers $1.00 and to pay $1.00 to the county. This has been the practice, as we understand it, ever since the present sheriff's interpleader act was passed, and in the absence of a definite showing by the county of what would be a proper fee for the appraisers, we are of opinion that the appellant cannot be charged with any more than he has already been on this account.

There is also a question between the parties as to the sum which the sheriff is required to pay to the county for appraisements under the exemption law. The original exemption act of 1849 provided only for fifty cents for each of three appraisers. In 1873 there was a special act for Allegheny county as to sheriff's fees, which provides for $2.50 to be collected by the sheriff for the

use of the county, and the county now claims of the sheriff this amount. The act of 1887, however, which is said to be in force in this county, provides for the appraisement under the exemption law the sum of $5.00, of which the sheriff shall pay each appraiser $1.00. This leaves $2.00 payable by the sheriff to the county, and that amount the sheriff has paid. His appeal should therefore be sustained as to the extra charge of fifty cents on each of these items.

The remaining question submitted is as to the fees or payments received by the sheriff or his deputies for serving statements under the Act of 1887, P. L. 271. This act, in sec. 4, provides that the plaintiff may, in actions of assumpsit, serve a copy of his statement on the defendant, and that if that is done not less than fifteen days before the return day of the writ, the defendant must file an affidavit of defense before the return day. It soon became apparent to the members of the bar that the easiest and promptest way to serve a statement was to get the deputy sheriff who was to serve the summons to take it with him and serve it for the plaintiff. This, of course, the deputy sheriff was not bound to do, nor had the sheriff himself anything to do with it, except that he might perhaps forbid it. The service was not performed by the sheriff himself, nor by his deputy as such, and the proof of its service was not by any return of the sheriff but by the personal affidavit of the deputy. As a matter of course it became usual for the plaintiff's attorney to pay a small sum to the deputy for his trouble. The fee bill of 1887 being passed before the procedure act of course makes no provision for any fee for the service, and the procedure act makes no such provision because it does not contemplate a service by the sheriff or his deputies. In the act of 1901, however, a fee is provided for the service of a statement of claim of $1.00 for the first service and fifty cents for every other defendant. Whether the act of 1901 intends to make service by the sheriff obliga-

tory or not does not appear; but as we have said, it is held that the act of 1901 is not in force in this county. That part of it is in force and other parts not, as contended by the county, we cannot admit.

Upon the questions submitted to us by the agreement as above stated, we are therefore of opinion that the law is with the appellant in all matters except as to the interest credited to his account as sheriff, which accrued upon fees paid to him, and that as to the interest received on those sums the appeal should be dismissed.

*Error assigned* was the judgment of the court.

*E. E. Cotton*, for appellant, cited as to interest on deposits: Potter v. Page, 53 Pa. Superior Ct. 268; Allegheny County v. Grier, 179 Pa. 639; McCleary v. Allegheny County, 163 Pa. 578; Schuylkill County v. Pepper, 182 Pa. 13; Schuylkill County v. Shoener, 205 Pa. 592; Phila. v. McMichael, 208 Pa. 297.

*James E. Barnett* and *Geo. H. Calvert*, with them *Richard B. Scandrett* and *W. H. Dodds*, for appellee.

*Blakeley & Calvert* and *George B. Berger*, for National Surety Company.

OPINION BY HEAD, J., April 19, 1915:

A careful study of the opinion filed by president judge SHAFER impels us to the conclusion that the reasons therein assigned for the judgment appealed from are sound and convincing. It is clearly pointed out that the first position taken by the appellant, arguing the right of the controller to go behind the audits of previous years—which audits had been long since finally confirmed and never appealed from—is wholly untenable. In relation to the interest paid by depository banks for the use of moneys in the sheriff's account, the differences

between the case at bar and Potter County v. Page, 53 Pa. Superior Ct. 268, are vital. In the case cited the money in controversy had been actually in the county treasury. It had been voluntarily and intentionally placed there by those who paid or donated it. The consideration which prompted the payment or gift of that money to the treasury was the use by the banks of funds which belonged wholly and entirely to the county and in which the treasurer personally had no interest whatever. That officer undertook to withdraw that money from the county treasury and appropriate it to his own use as if it were his. Manifestly, under such circumstances, the burden was on him to show by what right he could justify the taking from the treasury of money, prima facie, belonging to the county. His effort to show any right or title to that money entirely failed, and there remained nothing for him to do but to restore to the treasury the money he had taken from it under a misapprehension of his own rights.

In the present case it is, as to every item save perhaps one, clear that the sheriff was in no sense the fiscal officer of the county. By virtue of his office, in the execution of writs that came into his hands, he received large sums of money which belonged entirely to individual litigants and in which the county had no interest whatever. Whether or not he could rightfully receive, from the banks in which he deposited such moneys, interest for the use of the same is not a question raised by this record, but it is clear to us, as it was to the learned judge below, that no proper construction of the statute could give to Allegheny county the right to recover from the sheriff, moneys thus paid to him. When, as a result of the trial, it was ascertained what portion of the funds in the banks was made up of fees which the sheriff received for the execution of his writs, which fees did belong to the county; and when he was surcharged with the proportionate share of the interest paid by the banks, which could fairly be said to have

been earned by the deposit of fees due the county, the appellant had obtained every benefit which could be claimed for it from a proper application of the doctrine of Potter County v. Page, supra.

The remaining questions turn upon the construction of several statutes, and, as we view it, there is nothing we could profitably add to the opinion filed. We conclude therefore the county of Allegheny has in no sense been aggrieved by the entry of the judgment appealed from, and the assignments of error are overruled.

Judgment affirmed.