# Schuylkill County *v.* Wiest, Appellant.

*Public officers — Salaries — Fees — Hunters' licenses — County treasurer—Constitution of Pennsylvania, Art. XIV, Sec. 5—Act of March 31, 1876, P. L. 13, and Act of April 17, 1913, P. L. 85.*

1. Under Article XIV, Section 5 of the Constitution of Pennsylvania, and the Act of March 31, 1876, P. L. 13, passed to carry the Constitution into effect, a county treasurer in a county containing over 150,000 inhabitants is not entitled to retain the fees collected by him for issuing hunters' licenses under the Act of April 17, 1913, P. L. 85, but he is required to pay the sums so received into the county treasury.

2. An analysis of these enactments, constitutional and legislative, clearly shows the fixed intention to confine such salaried county officer to his salary as compensation for all services rendered in his official capacity.

3. The presumption is that when an officer receives money for services rendered in his official capacity, it is as compensation for the performance of duties as such officer and the fee is not to be held for his individual use.

Argued Feb. 12, 1917.    Appeal, No. 228, Jan. T., 1916, by defendant, from judgment of C. P. Schuylkill Co., March T., 1916, No. 318, for plaintiff on case stated, in case of County of Schuylkill v. Fred J. Wiest, County Treasurer.    Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ.    Affirmed.

Assumpsit for money had and received to plaintiff's use.    Before BECHTEL, P. J.

The opinion of the Supreme Court states the facts.

The court entered judgment for plaintiff on the case stated.    Defendant appealed.

*Error assigned* was the judgment of the court.

*John B. McGurl,* for appellant.—The services performed by defendant under the Act of April 17, 1913, P. L. 85, providing for the better protection of wild birds

and game and requiring hunters to procure licenses, imposes separate and distinct duties on the county treasurer, for which he is entitled to be paid in addition to his salary: Allegheny County v. Harris, 62 Pitts. L. J. 409.

*Edmund D. Smith,* Special Counsel, with him *C. E. Berger,* Solicitor for Controller, and *C. A. Snyder,* County Solicitor, for appellee.—Under Article XIV, Section 5 of the Constitution and the Act of March 31, 1876, P. L. 13, the treasurer of a county having more than 150,000 inhabitants is not entitled to receive fees in addition to his salary for any additional duties which he performs: McCleary v. Allegheny County, 163 Pa. 578; Philadelphia v. McMichael, 208 Pa. 297; Pittsburgh v. Anderson, 194 Pa. 172; Schuylkill County v. Reese, 249 Pa. 281.

OPINION BY MR. JUSTICE MESTREZAT, April 16, 1917:

This is an action of assumpsit brought by the County of Schuylkill to recover fees collected by the defendant, as county treasurer, for hunters' licenses issued by him under the provisions of the Act of April 17, 1913, P. L. 85. The treasurer claims that the fees belong to him personally, and that he is entitled to retain them for his own use, while the county contends that they belong to it and must be accounted for by the treasurer. The facts were agreed upon by the parties and submitted to the court in a case stated. The court was of opinion that the license fees collected by the treasurer belong to the county, and entered judgment against the defendant. He has taken this appeal.

The Act of 1913 was passed, as its title shows, for the better protection of wild birds and game within the State. It authorizes the county treasurer to issue a "Resident Hunter's License" granting permission to hunt for birds and game within the State, and provides penalties for a violation of its provisions. The eighth section

of the statute enacts as follows: "Said county treasurers
are herewith authorized to retain for services rendered
the sum of ten cents from the amount paid by each li-
censee, which amount shall be full compensation for
services rendered by him in each case under the provi-
sions of this act, and shall remit all balances arising
from this source, at least once a month, to the state treas-
urer, for the purposes otherwise provided for in this
act."

The County of Schuylkill contains over one hundred
and fifty thousand inhabitants, and, therefore, is within
Section 5, Article XIV, of the Constitution of Pennsyl-
vania, which provides, inter alia, as follows: "The com-
pensation of county officers shall be regulated by law,
and all county officers who are or may be salaried, shall
pay all fees which they may be authorized to receive, into
the treasury of the county or state, as may be directed by
law.   In counties containing over one hundred and fifty
thousand inhabitants, all county officers shall be paid by
salary."

To carry into effect this provision of the Constitution,
the legislature passed the Act of March 31, 1876, P. L.
13, Section 1 of which provides that in counties contain-
ing over one hundred and fifty thousand inhabitants "all
fees limited and appointed by law to be received by each
and every county officer......or which they shall legally
be authorized, required or entitled to charge or receive,
shall belong to the county in and for which they are sev-
erally elected or appointed; and it shall be the duty of
each of said officers to exact, collect and receive all such
fees to and for the use of their respective counties, except
such taxes and fees as are levied for the State, which
shall be to and for the use of the State; and none of said
officers shall receive for his own use, or for any use or
purpose whatever except for the use of the proper county
or for the State, as the case may be, any fees for any of-
ficial services whatsoever."

The act fixes the salary of the treasurer and other

county officers, and then provides in Section 15 as follows: "The salaries fixed and provided by the foregoing provisions shall be in lieu of all or any moneys, fees, perquisites or mileage, which are now or may hereafter be received by any officer named in this act; and all said moneys, fees, mileage or perquisites, received by any of them as compensation, fees or perquisites, from any source whatever, shall in all cases belong to the county, and shall be paid into the treasury, except where required to be paid to the State, as provided in this act."

We think there is no difficulty in sustaining the judgment entered for the plaintiff by the learned court below. The constitutional mandate and the legislative enactment passed to make it effective are so explicit that they do not require judicial construction. In fact, as was well said by Judge THAYER in Pierie v. Philadelphia, 139 Pa. 573, 578, "the prohibition of the receipt of fees for their own use, and the regulation of their compensation by fixed salaries exclusively could hardly have been expressed in plainer language than that which is written in the constitution. It is impossible for any ingenuity to prevail against it. There is nothing left for construction or interpretation. It interprets itself as plainly as any words in the English language can do so and there is no hook upon which to hang a query or a doubt." In making this assertion we are not unmindful of the several attempts made by county officers, as disclosed by the numerous cases in this court, to defeat the constitutional and statutory enactments by appropriating to their own use fees received in their official capacity. This provision of the constitution has never been satisfactory to county officials, who, by the assistance of able and ingenious counsel, have omitted no opportunity to evade its mandatory provisions.

An analysis of the enactments, constitutional and legislative, will clearly show the fixed intention to confine a salaried county officer to his salary as compensation for all services rendered in his official capacity. The

Constitution declares that he "shall pay all fees" which
he may be authorized to receive, into the treasury of the
county or State. The first section of the Act of 1876
provides that "all fees limited and appointed by law" to
be received by county officers shall be received "to and
for the use of their respective counties," and declares
that "none of said [county] officers shall receive for his
own use, or for any use or purpose whatever except for
the use of the proper county or for the State,......any
fees for any official services whatsoever." Section 15
seeks to emphasize, if it can be made more emphatic, the
provision of Section 1 by declaring that salaries fixed
by the act "shall be in lieu of all or any moneys, fees,
perquisites or mileage, which are now or may hereafter
be received by any officer......; and all said moneys
......received by any of them as compensation, fees or
perquisites, from any source whatever, shall in all cases
belong to the county, and shall be paid into the treasury,
except where required to be paid to the State, as pro-
vided in this act." As to this exception and in explana-
tion of it, Mr. Justice DEAN, speaking for the court, said
in Commonwealth v. Mann et al., 168 Pa. 290, 299: "This
would have been but little more significant if it had said
'except collateral inheritance taxes, state tax on writs,
wills, commissions and license fees.'" Section 9 of the
act requires county officers to make monthly returns to
the State treasurer of such taxes and all fees otherwise
due the State, and pay the same quarterly into the State
treasury, and provides that "all commissions on the col-
lection of such taxes as are now or may hereafter be al-
lowed by law shall be deemed and taken as part of the
regular fees of the officer collecting the same, and shall
be accounted for accordingly." The present controversy
is between an individual, who is county treasurer, and
the county. The State is not claiming the fees for which
this suit was brought nor is she interested in who gets
them.

The County of Schuylkill has a population of over one

hundred and fifty thousand, and the treasurer of the county is, therefore, a salaried officer. He receives five thousand dollars a year for his services. It is difficult to see, in view of the constitutional and legislative provisions, what claim the defendant, Wiest, county treasurer, as an individual and for his own use, can have on the fund in controversy. He, through his counsel, contends, in support of his claim, that the services performed by him, in collecting the hunters' license fees under the Act of 1913, were rendered to the State and were no part of his duties as county treasurer, but separate and distinct therefrom. This contention cannot be sustained. The Act of 1913 did not make Wiest a State officer, as will be conceded, nor did he have any functions as such to perform in the collection of the license fees. He did not receive the fees in controversy by authority conferred on him as a State official. The act deals with him as a county and not a State official, and not as an individual. The Constitution of the State fixes his status as a county officer. The county treasurer, as provided in the act, is authorized to issue hunters' licenses, to collect one dollar from each applicant, to retain ten cents from the amount paid to the licensee, and remit the balance to the State treasury. The act, therefore, confers its authority on the county treasurer and not on the individual who happens at the time to be the incumbent of the office. Each step he takes to carry out the provisions of the act is in his official capacity as county treasurer. The license is issued and signed by the county treasurer in his official and not his personal capacity. By virtue of his office, and not as an individual, he collects the license fee and retains the amount for services designated in the act. It is true that the license fees are levied for and are to be paid to the State, but it does not follow that the compensation for the services rendered in issuing the licenses and collecting the fees therefor is to be paid to and for the use of the individual who, at the time, is the officer authorized in his official capacity by the statute

to perform the service.   On the contrary, Section 9 of
the Act of 1876, as will be observed, provides that the
commissions for collecting state taxes and fees shall be
deemed "part of the regular fees of the officer collecting
the same, and shall be accounted for accordingly."   The
Act of 1913 does not appoint county treasurers as agents
of the Commonwealth to collect the license fees, nor does
it authorize them to apply to their own use the money re-
tained for such services.   The presumption is that when
an officer receives money for services rendered in his of-
ficial capacity, it is as compensation for the performance
of duties as such officer.   If Wiest had not held the office
of county treasurer, he could not have issued the hunters'
licenses or collected the license fees, and necessarily
could not have retained the designated fees for the serv-
ices.   He, therefore, holds the fees, received as compen-
sation, in his official capacity as county treasurer, and
under the constitutional and legislative mandates he
must account for them to the County of Schuylkill.

In construing the Act of 1876 and holding that the pro-
thonotary of Schuylkill County, a salaried officer, is not
entitled to the fees authorized by the act of congress to
be retained by him for the naturalization of aliens, Mr.
Justice STEWART, speaking for the court in the recent
case of Schuylkill County v. Reese, 249 Pa. 281, 286,
said: "These fees for services in connection with natural-
ization proceedings, though prescribed by federal stat-
ute, and by such statute directed to be paid to a clerk of
a state court, are quite as clearly limited and appointed
by law to be collected by such official as any fees pre-
scribed by State enactment.......It was only by virtue
of his official character, and not as an individual, that
he was authorized to collect and receive these fees; he is
not designated as an individual, but as an official."   The
Supreme Court of the United States, in Mulcrevy & Fi-
delity & Deposit Co. v. City and Co. of San Francisco,
231 U. S. 669, in construing a provision of the city char-
ter of San Francisco similar to the provision of our Act

of 1876 and applying this act of congress, came to the same conclusion, and held that the clerk should account to the county for the fees received by him. Mr. Justice MCKENNA, speaking for the court, said (p. 674) : "If it be granted that he was made an agent of the national government, his relations to the city were not thereby changed. He was still its officer, receiving fees because he was, not earning them otherwise, or receiving them otherwise, but under compact with the city to pay them into the city treasury."

The judgment is affirmed.