# In re Washington County Controller's Report

*A. L. Zeman,* for exceptant.

*Norman E. Clark* and *George T. Cummins,* contra.

BROWNSON, P. J., December 7, 1935.—From the official report of the county controller for the year 1934 Fred W. Brady, the sheriff, took an appeal, filing a number of exceptions to the report insofar as it related to and affected the office of sheriff. By agreement of counsel representing respectively the appellant, the County of Washington, and the county controller, a statement was drawn up of the questions raised or intended to be raised by this

appeal, and thereupon the court entered an order defining the issue to be tried as being made up of 17 questions.

A stipulation was entered into, submitting the case to the court for trial without a jury. A statement of agreed facts was presented in writing, which has been supplemented as to one matter by testimony taken before the court (this testimony not having been contradicted), and all the facts of the case are undisputed. The questions of law arising thereon have been argued by counsel and are now for decision.

The various questions stated in the order framing the issue for trial fall into classes or groups, and the questions making up each class or group may be considered and dealt with together.

I. Questions 1, 2, 3, 4, 6, and 7 all relate to the form in which the controller's report is stated. Questions 2 and 3, as to whether the sheriff is entitled to and has received credit for certain fees paid over by him to the county treasurer, and certain fees earned which were chargeable to the county, we understand to mean, whether these fees should have been and have been credited to him as earnings of the office for the purpose of ascertaining whether it has earned enough to provide for the payment of his salary in full: See section 6 of the Act of March 31, 1876, P. L. 13. As the report shows that, for the period between the date of his taking office and the close of the year 1934, the appellant's salary has been paid in full, it follows that, for the purpose aforesaid, the controller has in effect, or by implication, given credit for these fees, and therefore we understand these two questions to go only to the form and manner in which the report is stated, as below set out.

The facts upon which questions 1, 2, 3, 4, 6, and 7 arise are, briefly stated, as follows:

The only references to the sheriff's office in the controller's report (so far as relevant in this issue) are: (a) A statement of revenue received from the sheriff, $15,008.73; (b) a statement of the regular fixed salaries

of sheriff, deputies and clerks, and of expenses connected with the office that were paid, the salaries paid being given in one lump sum, to wit, $15,157.66, and the other expenses, which are itemized, amounting to $3,256.74; and (c) a list of the salaries of the officer and others employed in the office. The lumped aggregate of the salaries included in (b) is the same amount as the sum of the salaries listed under (c). But these statements appear in different parts of the report. There is no separate account stated with the appellant, specifically showing the total net earnings of his office during his incumbency down to the end of the year, and specifically showing whether these equaled or exceeded the amount of salary paid him, or specifically showing whether he is indebted to the county or the county to him. Nor can these matters be ascertained by a collation of the various figures found in different portions of the report; at least, it would require explanations and information aliunde the report to make up a statement of them:

The Act of March 31, 1876, P. L. 13, requires every salaried county officer who collects fees belonging to the county, or earns fees chargeable upon the county, to keep in his office a special detailed account of the same, and to furnish to the controller a monthly transcript thereof, supported by oath or affirmation, the correctness of which the controller may verify by an inspection of the books, accounts, records and papers in the office, and requires the controller to ascertain monthly whether the net earnings of the office are sufficient to provide for the payment in full of the monthly instalment of the officer's salary. The provisions, contained in the Act of June 27, 1895, P. L. 403, amended by the Act of March 27, 1913, P. L. 10, by which the office of controller was established in all counties containing 100,000 inhabitants or over, whereby the controller's functions and duties were defined, have been codified in article IV of The General County Law of May 2, 1929, P. L. 1278, and substantially reënacted thereby. By the provisions of the latter statute

the controller is given "general supervision and control . . . of the accounts and official acts of all officers or other persons who shall collect, receive or distribute the public moneys of the county, or who shall be charged with the management or custody thereof": section 341 is required to "scrutinize, audit and decide on all bills, claims and demands whatsoever against the county": section 349 is to file in the common pleas a report showing the result of his settlement of the accounts of other officers, which report "from the time of such filing, shall have the effect of a judgment against the real estate of the officer who shall thereby appear to be indebted either to the Commonwealth or to the county", but shall be subject to appeal: sections 378, 379 and his annual report, as filed, shall embrace "a full statement of the financial conditions of the county": section 345. Stating fully the financial condition of the county necessarily implies and involves a setting forth of the state of the accounts between the county and each of the officers. The effect of all this is that the law intends and requires that the controller shall audit the accounts of the sheriff and other officers and set forth the result of such auditing in his annual report, and that this report, if not appealed from, has the effect of rendering the state of the accounts between the officer and the county, as therein set forth, res judicata: O'Gara et al. v. Phillips, 297 Pa. 526.

We therefore hold that the report here appealed from is not in proper form, as affecting the office of sheriff, in that it does not embrace an account between the county and the sheriff, made up of debits and credits, and exhibiting such balance, if any, as may be owing from or to such officer, and showing whether or not, during the period covered by the report, the net income of the office from fees and emoluments was sufficient to pay the full salary as fixed by statute. By the provisions of the Act of March 31, 1876, P. L. 13, the officer can be paid, upon his salary, only so much thereof as the net income of the office is sufficient to meet; but in the event of a deficiency

this may be made up out of subsequent income of the office that may be sufficient for the purpose, and the audit and settlement of the officer's accounts should show whether he has such a claim against future earnings of the office. Both he and the taxpayers are entitled to have this unequivocally shown.

Accordingly we answer questions 1, 2, 3, 4, 6, and 7 (interpreting and understanding nos. 2 and 3 as relating to whether the report has given credits in the proper manner and form) in the negative.

It is said that this report of the controller is in the same form that has for a number of years been used by his predecessors in office. But a usage of the officers in this respect cannot repeal requirements which the statute makes by express language, or by implication from the general scope and intent of its provisions.

II. The appellant is claiming to be entitled to have returned to him, and to be credited with, as being payable to him for his own use, the items of mileage mentioned in questions 8 and 9, which aggregate, as is specified in question 11, $5,186.16. The questions numbered 8 to 12 inclusive, and 16 and 17, all relate to this mileage claim.

There was taxed, and was collected by the appellant as sheriff, upon process which he executed, mileage in the aggregate sum of $3,793.12. At the time when the appellant took office, there was in existence an arrangement between the county commissioners and appellant's predecessor, under which the county furnished to the sheriff automobiles for use in doing the traveling necessary for the performance of his official duties, and paid for the upkeep and repair of the cars and for the gasoline and oil used therein, thus defraying the actual cost of travel; and the sheriff paid into the county treasury the whole of the mileage collected. The appellant adopted this arrangement upon going into office, and thereafter acted under it. The expenditures made by the county for the

purposes aforesaid, in 1934 during appellant's incumbency, amounted to $1,300.

There was also taxed mileage which accrued in proceedings wherein the county was chargeable with the costs, to the aggregate amount of $1,393.04. This mileage was not actually collected and paid, but was reported by the appellant in his monthly reports, as "earned (and) chargeable upon the county treasury", to the end that it might be taken account of in the manner specified in section 5 of the Act of March 31, 1876, P. L. 13. The arrangement between the county commissioners and the sheriff, above mentioned, applied to and embraced this mileage also.

The two items of mileage which are alleged by the appellant to belong to him personally are claimed under section 2 of the Act of June 1, 1933, P. L. 1141, which provides as follows:

"In all the counties wherein the sheriff is or shall be compensated by a salary, all fees and commissions which he shall be required or entitled to charge or receive . . . shall belong to the county, except such taxes, fines and fees as are levied or collected for the Commonwealth or for the Federal Government, and he shall not retain for his own use any such fees or commissions, but shall be entitled to all mileage and other allowances for costs and expenses chargeable by him, including the compensation of special deputies.

"However, no county whose sheriff is salaried shall be required to pay him any fee or commission for services rendered to it by him, or his regular deputies or clerks, to which the county would be entitled if same shall be credited on his fee account as if same had been paid to him and accounted for by him; and such a sheriff shall be entitled to deduct from any fees or commissions collected by him and due the county any overdue items for his salary or the compensation of his deputies, clerks, or other agents, or for mileage or other allowances aforesaid, or for any other charges against the county except fees or

commissions earned by him or them to which the county is entitled as aforesaid, provided he shall furnish the county treasurer of the county with itemized statements of such deductions, which shall be subject to audit, exception and correction in like manner as his fee accounts and claims against the county as now or hereafter provided by law."

This section of the Act of 1933 purports clearly to give to the sheriff the ownership, and the right to have and enjoy for his own use, "all mileage". But the county has raised two constitutional questions as to the validity of this enactment.

One objection made is that the title of the act is insufficient to cover this provision. In our opinion, however, this title is sufficiently broad and comprehensive to give notice of, or to put upon inquiry concerning, every provision contained in the bill: Commonwealth v. Stofchek, 118 Pa. Superior Ct. 412.

A more serious question as to constitutionality arises under section 5 of article XIV of the Constitution of 1874, which provides that: ". . . all county officers who are or may be salaried shall pay all fees which they may be authorized to receive, into the treasury of the county or State, as may be directed by law" and that "in counties containing over one hundred and fifty thousand inhabitants all county officers shall be paid by salary, and the salary of any such officer and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term and collected by or for him."

Before this office came under the salary system, the sheriff collected what his fee bill allowed him to charge, paid his expenses out of this, and kept the remainder of his collections as his personal compensation for performing his official duties. The fee bills allowed him to charge certain specific sums for particular services, and also an allowance of so much for each mile traveled by him, the latter being sometimes designated in the fee bills as an allowance "for traveling expenses" and sometimes as "mileage." This mileage was usually fixed at a liberal

rate, and if he were careful and judicious in regulating the expenses of travel, he could save for his own use part of this mileage allowance. Indeed, it has been a general practice of the legislature, in enacting fee bills, to prescribe a higher mileage rate for officers than for jurors and witnesses, with the idea that the specific "flat" charges for particular services, and the mileage charges allowed, at a liberal rate, would together be enough to give to the officer a sufficient amount, over and above his expenses, to serve as adequate compensation for performing the duties of his office. The appellant claims in this case that, under the Act of 1933, he is entitled to be compensated for travel in the same manner as has just been spoken of, i. e., that he is entitled to enjoy the benefit as a personal emolument, in addition to his salary, of the difference between the gross mileage and the actual expense of the traveling done. The Act of 1933 appears to purport, upon its face, to give the sheriff the benefit of this difference, and the question arises: Can the legislature constitutionally give to the sheriff, for his own use and benefit, any part of the mileage accruing to the office in addition to his salary? It is clear, and our courts have decided, that an enactment purporting to authorize an officer, who is salaried in accordance with this constitutional provision, to retain and apply to his own use, by way of compensation for official services rendered in his capacity as a county officer, anything in addition to the salary fixed by law, is not constitutionally valid: Philadelphia v. McMichael, 208 Pa. 297; York County v. Fry, 290 Pa. 310.

This question involves a consideration of the sense in which section 5 of article XIV used the word "fees" when it substituted compensation by salary in the place of compensation by fees, and provided that all fees should be paid into the county treasury.

This word is used in different senses—at times in a broad and inclusive sense, and at times in one more narrow and restrictive, the former being in accordance with

the popular understanding of the term: Camp v. Bates, 13 Conn. 1. A comprehensive or generic sense in which it is employed includes all sums paid for services rendered, in the form of a charge to be made for each service performed, in which sense it is used in contradistinction to salary, which consists of a lump sum periodically paid as general compensation for all services which the officer performs. This is a recognized meaning of the word "fees", according to both lexicographers and legal decisions: see, for example, 2 Bouvier's Law Dictionary, 1198; Board of County Commissioners of Hennepin County v. Dickey, 86 Minn. 331, 90 N. W. 775, 776; Smith, County Treasurer, etc., v. Dunn, State Controller, 68 Cal. 54, 8 Pac. 625; Finley, Probate Judge, etc., v. Territory of Oklahoma, ex rel., 12 Okla. 621, 73 Pac. 273, 278; and the Pennsylvania cases hereinbelow cited. In Burrows v. Balfour, 39 Ore. 488, 65 Pac. 1062, it was held that the word "fees", in the sense in which it was used in a statute, included mileage.

Whatever is paid as a compensation for services is a fee, in this sense of the term, whether its amount be previously prescribed as a fixed sum, or whether it is to be measured by a scale to be applied to the circumstances connected with the service, as for example a percentage of money handled, or an allowance for each mile traveled when engaged in performing a service, or the like, the fact that the fee bill may call it a "commission" or "mileage" being immaterial.

Another sense in which the word "fees" has been used is to distinguish fixed and certain sums paid for specific services from compensation that is measured by a scale, such as commissions, mileage, etc. It is in this latter sense that the Act of 1933 appears to use the word "fee", distinguishing as it does between fees and commissions and mileage.

But the question here is, not with what meaning the legislature of 1933 used this word, but in what sense it was used in the Constitution.

We start out with the Act of March 31, 1876, P. L. 13, which its title declares to be: "An act to carry into effect section five, of article fourteenth, of the constitution".

In other words, the entire and sole intent of this statute is declared by the title to be to cause to be done what the Constitution required; and accordingly the provisions in its text as to what the officers should be required to pay into the treasury amounted to a practically contemporaneous construction, by the legislature, of the scope of section 5. When it provided in section 15 that the salaries fixed by the act should be in lieu of "all or any moneys, fees, perquisites or mileage" these quoted words were "intended to be an elaboration of the word 'fees' used in sec. 1": Opinion of Judge Shafer, approved by the Superior Court, in Controller's 52d Annual Report, 59 Pa. Superior Court 450, 453. They were intended to make it unequivocally clear that the word "fees" as used in the constitutional provision which this statute was intended to carry into effect, was to be considered, and by the legislature was considered, as embracing, not merely "fees" in the narrower sense of the word, but also all other moneys received as compensation for services or perquisites, whether called mileage or by any other name.

The reasonableness of such an interpretation of the Constitution is supported by the fact that prior to its adoption (as also thereafter) it was a common practice for statutes to use the word "fees" in the large and comprehensive sense hereinabove referred to, as comprehending whatever the officer is authorized to charge and receive for services performed, and thus as including mileage. The Act of February 22, 1821, 7 Sm. L. 367, was entitled: "An act to alter and amend the fee bill", and the fee bill which it enacted under that title included and dealt with mileage. Moreover, section 3 of the act, dealing with the office of sheriff, provided: "That the fees to be taken by the sheriff of each county shall be as follows, viz." and then, under this videlicit, it specified,

not only fixed fees for divers particular services, but also the rate of mileage to be charged. Thus the word "fees" was unequivocally used as embracing mileage. This practice continued down to the framing of the Constitution. Instances of this are: The Act of May 6, 1864, P. L. 870, "Relating to the fees of Constables" in certain counties; the Act of April 3, 1866, P. L. 94, "to amend the fee bill, as to constables" in Philadelphia; and the Act of April 6, 1871, P. L. 476, which prescribed the "fees" to be received by the Sheriff of Allegheny County. In each of these acts it was provided: ". . . that the fees to be received by [the officers named] shall be as follows" and the succeeding specification of the fees so prescribed included designations of the mileage to be charged. The same practice of using the word "fees" as embracing mileage was continued in statutes passed after the Constitution's adoption: see, for example, the fee-bill Acts of June 12, 1878, P. L. 187, and July 11, 1901, P. L. 663. It was the general understanding that the word "fees" in a statute relating to the compensation of public officers had a signification broad enough to include under it mileage allowances; and, indeed, to hold that it does not have this signification would result in rendering all fee bills passed since the constitutional amendment of 1864 (which was to the same effect as section 3 of article III of the present Constitution) invalid insofar as granting to officers the right to charge mileage. It seems clear, then, that when adopting the Constitution in 1873, the people would understand the word "fees", as used therein, in this sense. As Mr. Justice von Moschzisker well says in Luzerne County v. Morgan, 263 Pa. 458, at page 463:

"While a technical distinction has been drawn between 'fees' and 'commissions,' yet it is hardly conceivable that the people, in adopting the Constitution, had any such difference in mind; in all human probability the word 'fees' was understood by them in its plain dictionary sense, as meaning the 'recompense allowed by law to an officer for his labor and trouble' ". In this part of his

opinion he had not yet reached the point—not involved in the present case—upon which he dissented from the majority of the court. And what he says may be said also with regard to the distinction, which the Act of 1933 undertakes to draw, between fees and mileage.

The reported cases in our appellate courts support the view that the Constitution does not use the word "fees" in the technically narrow sense in which it is employed in the Act of 1933, but in the broad and comprehensive sense to which we have referred.

The object and intent of the Constitution were "to strike down the fee system in all counties containing over 150,-000 inhabitants": The City of Pittsburgh v. Anderson, 194 Pa. 172, 177; to substitute, in all such counties, "a new system of fixed salaries for the old and universally condemned system of fees": Pierie v. Philadelphia, 139 Pa. 573, 582; to confine the compensation of the officer, for all services rendered by him in the capacity of a county officer, to a fixed salary, so as both to give to the county the benefit of any increase in the revenues of the office to an amount beyond what would be sufficient to pay a reasonable salary, and also to take away the personal interest of the officer in the charges to be made by him, which was a fruitful source of disputes with litigants and gave rise to a temptation to extortion: Schuylkill County v. Pepper, etc., 182 Pa. 13, 15; Controller's 52d Annual Report, 59 Pa. Superior Ct. 450, 453 (opinion of Judge Shafer, approved on appeal); Schuylkill County v. Wiest, 257 Pa. 425, 428; Commonwealth v. Mann et al., 168 Pa. 290, 299. There was as much occasion for seeking to attain the objects last mentioned—benefiting the counties and avoiding motives for extortion and abuses—in connection with mileage charges as in connection with fees in the narrow sense. The effect of the Constitution has therefore been interpreted to be that the legislature has no power, in counties of over 150,-000 inhabitants, to authorize a salaried officer to retain for his own use, as compensation for his services in

his official capacity, any moneys collected that come within the signification of the word "fees" as used in the Constitution, except where the service to be compensated is one rendered in the capacity of an agent for the Commonwealth or the Federal Government, expressly constituted as such by statute, so that he is not acting therein qua county officer: York County v. Fry, 290 Pa. 310; Lehigh County v. Sefing, 289 Pa. 33, 35; Philadelphia v. McMichael, 208 Pa. 297, 306; Bachman's Appeal, 274 Pa. 420, 425. And it matters not by what name the compensation may be called in the statute; if it be a recompense or reward for the performance of official services, such as is to go into the officer's pocket and enure to his personal use and benefit as an emolument, any legislation so giving it to him is invalid, whether it be called a fee, or a commission or by any other name. The word "fees" in the Constitution, it has been expressly decided, is not confined to the narrow sense in which the Act of 1933 uses the word (viz. a sum certain given for a particular service), but includes within its meaning commissions: Schuylkill County v. Pepper, etc., 182 Pa. 13, 15; Philadelphia v. McMichael, 208 Pa. 297; Pittsburgh v. Grenet et al., 238 Pa. 567, 574-577; opinion of Mr. Justice von Moschzisker in Luzerne County v. Morgan, 263 Pa. 458, 463. This is because a commission is a "recompense allowed by law to an officer for his labor and trouble", and therefore comes within the general definition of a fee. Likewise, where an allowance is given and required to be paid to an officer for expenses, in an arbitrarily fixed sum, the surplus of this, over and above the actually incurred expenses, constitutes an emolument of the office, and therefore comes within the general meaning of the word "fees": Commonwealth v. Fry, etc., 183 Pa. 32, 37. The ruling in that case is not affected by the suggestion made in Bell v. County of Allegheny, 184 Pa. 296, at page 301, which was only a dictum of Mr. Justice Dean, the decision being based exclusively upon the principle of res judicata. If the sheriff be allowed to

retain for his own use the excess of the mileage collected, over actual expenditures for travel, he would be getting a recompense for labor and trouble in addition to his salary —a private profit out of his office that would go to him as a personal emolument. We do not believe that the Constitution allows this. If it were to be allowed, it would be easy to evade the Constitution by fixing the mileage at a liberal rate, largely exceeding the actual expenses of the travel. The facts of this case indicate that the $5,186.16 of mileage claimed by the appellant is considerably in excess of the actual traveling expense.

The Act of 1933 may be constitutional insofar as its effect may be to permit the sheriff to retain mileage for the purpose of making deduction therefrom of his proper expenses and of any charges he may have against the county for overdue claims, and until such deductions shall have been made; but it is not valid insofar as it purports to go beyond that. Assuming validity to the extent just indicated, it is, however, clear that the appellant did not have, and does not have, any claim against the mileage involved in this case for traveling expenses, because all such expenses were paid by the county in the manner set forth in the findings of fact, above, and the evidence shows that no claims for any other deductions were made by him in the manner prescribed by section 2 of the Act of 1933, for the reason that he had no such claims. We are therefore of opinion that the payment into the county treasury of the gross amount of the mileage collected was correct; and that, the county having paid his traveling expenses, and he not having any claims for other deductions, the whole of this collected mileage belonged to the county, as paid into the treasury.

Moreover, such payment was a voluntary payment, and moneys that are voluntarily paid into a public treasury, for the use of the public, cannot be recovered back when the payment is not made upon a mutual mistake of fact, even though there may have been a mistake in law: Borough of Allentown v. Saeger, 20 Pa. 421; Taylor v.

The Board of Health, 31 Pa. 73; McCrickart v. The City of Pittsburgh, 88 Pa. 133; Luzerne County v. Morgan, 263 Pa. 458, 465, per von Moschzisker, J.

Our conclusion is that the appellant is in no event entitled to recover back any of the mileage which he paid into the treasury, and that he is not, under the Constitution, entitled to have either of the mileage items which he claims credited to him as moneys which are owing to him by the county and which he is entitled to receive and keep for his own use; and the only credit he was entitled to on account thereof was in the statement and calculation required to be made for the purpose of ascertaining whether the net revenue of the office equaled the full amount of the salary fixed. That he has received a credit of that kind is evident from the fact that his salary was paid in full.

III. The thirteenth question is: "Did the appellant comply with the Act of March 31, 1876, P. L. 13, as referred to in paragraph 7 of the defendants' answer, and if he did not, is he entitled to recover in this proceeding?"

The answer filed by the county avers that the appellant did not file with the controller sworn statements as required by the act.

As a matter of fact, the appellant did not make oath to his monthly statements; nor did the controller exact an oath from him before paying his salary. Under these circumstances, we believe that, were the absence of such an oath the only reason for refusing to give him a personal credit for the mileage he is now seeking to recover for his own personal use, we could allow the affidavits to be made nunc pro tunc; but as we have rejected the mileage claim on other grounds, the question, whether this act was complied with, and the question whether the absence of the affidavits would be a reason why he should not "recover in this proceeding", become immaterial.

IV. The fourteenth question relating to the filing of statements of deductions in the form specified in section

2 of the Act of June 1, 1933, P. L. 1141, was rendered immaterial by the evidence showing that the appellant not only was not allowed but did not present and did not have any claims for deductions such as that section of the act refers to.

V. The fifth question relates to what deductions are to be made under the Act of March 31, 1876, P. L. 13.

The deductions which that act provides for are to be made for the purpose of determining the extent to which the officer's salary is payable, and the deductions to be made for that purpose are specified in section 6 of the act as consisting of "the amount due the deputies and clerks in each office." The act does not deal with, and therefore this question does not relate to, any other expenses which may be chargeable to the county, and may be deductible for other purposes. This, we think, is as far as the facts of the present case can require us to go in answering this fifth question.

VI. The only question that is not answered or ruled by what has been said above is the fifteenth, as to whether the Acts of February 22, 1821, 7 Sm. L. 367, and March 12, 1866, P. L. 171, are still in force in Washington County.

As the Act of June 1, 1933, P. L. 1141, expressly repeals all inconsistent acts, whether general, special or local, our opinion is that the acts first mentioned are no longer in force in Washington County. The answer to this question, however, does not affect the judgment to be rendered herein.

### Conclusions of law

1. The controller's annual report for the year 1934 is not in the proper form intended by the law, in that it does not include the statement of an audited account between the county and the sheriff, explicitly showing the state of the accounts between them.

2. The Act of June 1, 1933, P. L. 1141, is not constitutionally valid legislation insofar as it purports to give to the sheriff, in counties of over 150,000 population, the benefit, for his personal use, of the surplus of mileage

earned by his office over and above all expenses that may by law be properly chargeable against and deductible from the said mileage.

3. The appellant is not entitled to recover, or to have credited to him, as moneys owing to him from the county and receivable by him for his own use, the mileage moneys, which he claims, amounting to $5,186.16, or any part thereof.

4. The Act of March 12, 1866, P. L. 171, creating a local fee bill for Washington County, consisting of the rates specified in the Act of February 22, 1821, 7 Sm. L. 367, with a percentage added thereto, is no longer in effect as the sheriff's fee bill, having been superseded by the rates specified in the Act of June 1, 1933, P. L. 1141.

*Interlocutory order*

And now, December 7, 1935, it is ordered that the foregoing adjudication be filed of record and that notice of such filing be given to the counsel of the respective parties; and if no exceptions be filed thereto sec. leg., final judgment shall be entered.

*Final judgment*

And now, . . . . . . . . . . , 1935, it is ordered, adjudged, and decreed:

1. That the annual report of the county controller for the year 1934 is not in the due and proper form required by law, in that it fails to set forth an audited account of the sheriff with the county, setting forth a summary of debits against and credits to said officer, and exhibiting the state of accounts between said parties and the balance, if any, owing by or to the sheriff; and also showing whether the net revenues or earnings of the office have been sufficient to provide for the payment of his salary in full. And to supply this defect, it is ordered that the controller file a supplemental report, as to the sheriff's office, setting forth the matters above mentioned.

2. That the appellant is not entitled to recover, or to have credited to him as moneys owing to him from the

county for his personal use, the mileage moneys which he claims, aggregating $5,186.16, or any part thereof; and the appellant's claim for, and his exceptions relating to, said mileage moneys, are dismissed.

3. That the costs of this appeal be paid by the County of Washington.

*Opinion sur exceptions*

BROWNSON, P. J., March 7, 1936.—By exceptions filed by him to the county controller's report for the year 1934, the sheriff advanced the claim that he was entitled to be credited in the report, as an indebtedness of the county to himself personally, with mileage moneys which he had collected and paid into the county treasury, in the amount of $3,793.12, upon the ground that the Act of June 1, 1933, P. L. 1141, authorized the sheriff to retain for his own use all mileage collected, and hence these moneys had been paid to the county treasurer under a mistake of law.

He likewise claimed, under said Act of 1933, to be entitled to be paid mileage by the county to the amount of $1,393.04, which had accrued in cases wherein the costs were chargeable to the county.

He conceded, however, that the county would be entitled to an offset of payments of traveling expenses which it had made, the agreed amount of which was $1,300. The net amount claimed by him was accordingly $3,886.16.

At the hearing upon these exceptions, the sheriff testified that he had made no claims for any deductions from the mileage moneys for any expenses (aside from the expenses which the county had paid as above stated), and he advanced no claims for expenses at the hearing. The question raised by the exceptions, for determination by the court, was accordingly the simple question of law, whether by virtue of the Act of June 1, 1933, P. L. 1141, he is entitled to have credited and paid to him, and to hold and keep for his own personal use, the surplus, over and above actual traveling expenses, of the mileage moneys

which he had collected, and the mileage which accrued and was chargeable to the county, in connection with the service of writs.

This court filed an adjudication in which this claim of the sheriff was rejected, for more than one reason. One of these reasons was the principle that moneys voluntarily paid into a public treasury by an officer upon an alleged mistake of law cannot be recovered: Borough of Allentown v. Saeger, 20 Pa. 421; Taylor v. The Board of Health, 31 Pa. 73; McCrickart v. The City of Pittsburgh, 88 Pa. 133; Luzerne County v. Morgan, 263 Pa. 458, 463. This applies to so much of his claim as consists of mileage moneys collected by him in cash and paid by him into the county treasury. And as to so much of the claim as consists of mileage not actually collected in cash, but merely charged to the county, no itemized claims to or against it were presented in accordance with section 2 of the Act of 1933, supra.

The other reason was that the Constitution of the Commonwealth does not permit a salaried county officer to be given, and to receive and retain for his own use, any profit or emolument for or in connection with his services in the character of a county officer, other than the salary fixed and prescribed by statute in pursuance of the mandate contained in section 5 of article XIV of the Constitution of Pennsylvania.

To so much of this adjudication as lays down the constitutional rule just mentioned, and interprets the Constitution as having the effect stated, exceptions were filed, which have been argued. It is contended that the Constitution, when requiring that county officers shall, in counties of a given population, be compensated by fixed salaries, and all fees received by them shall be paid into the public treasury, uses the word "fees", not in a general or generic sense, but in a restricted sense such as that which it bears in the Act of 1933, supra, which undertakes to make a distinction between "fees" and "mileage", and

treats the latter as not embraced in, but as being a separate and distinct thing from, fees.

We cited, in the adjudication, statutes showing that in legislative practice, prior to as well as after the adoption of the Constitution, the word "fees" was habitually used in a generic or comprehensive sense which included mileage; we cited a number of cases in our appellate courts declaring that it was the intention of the people, when they adopted the Constitution, wholly to do away, in the larger counties, with the entire fee system as it had theretofore existed (a part of which was to permit the officer to have the benefit of and to profit by any surplus of the mileage allowed, over and above his actual expenses), and that the people when adopting the Constitution cannot be supposed to have had in contemplation the drawing of fine distinctions between "fees" (in a restricted sense of the term) and other forms of compensation; we cited the Act of March 31, 1876, P. L. 13, wherein the legislature, passing that statute for the declared purpose of carrying into effect section 5 of article XIV of the Constitution, placed upon the language of the Constitution a practically contemporaneous construction as requiring the payment into the county treasury of mileage as well as fees proper, the language of section 15 of that act being said to be intended as an elaboration or amplification of the word "fees" as used in the Constitution: Controller's 52d Annual Report, 59 Pa. Superior Ct. 450, 453.

With regard to our reference to the Act of 1876, supra, two things have been said in argument: (a) That the Act of 1876 is no longer in effect, having been repealed by subsequent acts concerning fees and mileage which took its place (but this does not take away the fact that this act is evidence to show what was the contemporaneous understanding of the meaning, scope and effect of the Constitution) ; and (b) that the word "mileage" got into section 15 of the Act of 1876, supra, "either by mistake or as a joker" (but to this suggestion we do not think

there is any ground or justification for our giving consideration).

It is argued also that the statutes giving to judges sitting outside of the counties of their residence mileage at rates greater than train fares (the rates fixed being intended to cover incidental expenses, such as meals and lodging), without requiring any account of actual expenses, have never been regarded as unconstitutional. But the section of the Constitution dealing with "compensation" of judges is quite different from that relating to county officers. This is true, also, of the section relating to the compensation of members of the legislature.

It is said also that the mileage allowances of county officers are fixed by the fee bills at a liberal rate so as to cover all incidental expenses, and with the intention that there shall be no accounting as to the expenses. It was the case in all counties, before the present Constitution, that the officer was not bound to render any account of expenses, and might, without doing so, keep for his own profit all of the mileage allowance not absorbed by actual expenses; and this is still the case in counties to which this constitutional provision does not apply, in the absence of a statute establishing a contrary rule. But the question before us is whether section 5 of article XIV of the Constitution takes this sheriff out of such a rule.

In our adjudication we did not say that the provisions of section 2 of the Act of 1933, supra, are unconstitutional in toto. On the contrary, we said that this section might be constitutional insofar as it authorizes the sheriff to retain mileage for the purpose of paying his expenses thereout and of making any deductions for any proper charges he may have against the county, rendering accounts and filing statements of deductions in the manner spoken of in the last clause of the section. The extent to which we went was to say that, in the opinion of the judges, the act insofar as it may purport to authorize the sheriff to retain for his own use and profit so much

of the mileage as is in excess of the expenses incurred is not in harmony with the Constitution.

This is not a case in which the sheriff's actual traveling expenses amount to just a few dollars less than the mileage, and the exceptant cannot argue that such small difference ought not to be regarded because of the principle of de minimis. The surplus which he is claiming for his own profit and use amounts to $3,886.16, a sum equal to nearly 60 percent of his salary, and the case is an illustration of what we pointed out in the adjudication, viz., that it would be easy, if the exceptant's contention be accepted as correct, to evade the purpose and intention of the Constitution by giving, while fixing salaries which the public would regard as reasonable, a high allowance for mileage.

The word "fees" is sufficiently comprehensive in its scope to embrace all emoluments of the office: Lehigh County v. Sefing, 289 Pa. 33, 36. And when an allowance was made to an officer "for expenses", he being at liberty to keep for his own use so much thereof as might exceed the actual expenses, this was an emolument of the office, coming within the meaning of a statute imposing a tax on the officer's "fees": Commonwealth v. Fry, etc., 183 Pa. 32, 37. (The adjudication refers to a dictum of Mr. Justice Dean, in Bell v. County of Allegheny, 184 Pa. 296, which may not be in harmony with that case, but was not a decision of the court.) The officer is limited by the Constitution to his salary, when acting in the capacity of a county officer: Bachman's Appeal, 274 Pa. 420, 425; and the legislature has no power to give him additional compensation for his personal use and profit: Philadelphia v. McMichael, 208 Pa. 297, 306, 307.

We are not unmindful of the principle, referred to in the argument, that an enactment ought not to be pronounced unconstitutional unless it clearly and plainly contravenes the Constitution. But, after careful and attentive consideration, we are all convinced that it is the pervading intent of the constitutional provision, clearly

and plainly apparent upon the face thereof, to prohibit the allowance to a county officer, in a county having over 150,000 inhabitants, either directly or indirectly, of any profit or personal emolument in connection with the performance of the duties resting upon him qua county officer, by whatever name this may be called, in addition to or other than the salary which has been fixed by law in obedience to the mandate of the Constitution.

We refer to the adjudication for a fuller and more detailed discussion, and for authorities therein cited. We are not convinced that the reasons we have given for rejecting this claim of the sheriff are unsound.

And now, March 7, 1936, after the argument and consideration, the exceptions filed to the adjudication are overruled and dismissed, and it is ordered that the prothonotary shall enter of record, as the final judgment or decree of the court, a decree in the form which is annexed to said adjudication.

From Harry D. Hamilton, Washington.