**WEBSTER COUNTY, Kentucky, Appellant,**

**v.**

**R. T. NANCE, Appellee.**

Court of Appeals of Kentucky.

Dec. 7, 1962.

Warren B. Miller, Dixon, Earle M. Nichols, Madisonville, for appellant.

Damon A. Vaughn, Thomas L. Withers, Dixon, for appellee.

STANLEY, Commissioner.

This is an action by Webster County to recover of R. T. Nance sums collected by him as a justice of the peace during the years 1954 through 1957 in excess of $5,000 per year.

The fiscal court had set a per diem fee of $15 for magistrates' attendance upon each of its meetings, but did not place a limitation on their total compensation. The maximum compensation was, therefore, that which had been previously fixed before the term of office began, KRS 64.700, which was $5,000. Upton v. Whitley County, Ky., 256 S.W.2d 3; Funk v. Milliken, Ky., 317 S.W.2d 499. The plaintiff prayed judgment for four annual sums, averaging $9,221.50 and aggregating $36,986.35, and interest. Except a few hundred dollars for attendance upon meetings of the fiscal court. the

rest came from fees from holding court in criminal cases.[1] The appeal is from a judgment denying any recovery and dismissing the complaint.

The defendant, Nance, held court at Slaughters, a village on U. S. Highway No. 41, which is a heavily traveled north and south thoroughfare through the western part of the state. An average of 1,443 cases a year were disposed of by him. All of them were for alleged violations of traffic laws, principally speeding. All the defendants had pleaded guilty—most of them to amended charges of breach of the peace—and were fined $1 and costs. The costs were assessed as $20.50, which included $5 for the county attorney. The magistrate had told each defendant the amount of the fine and costs and that they would have to pay it or go to jail or make bond. Squire Nance collected the sums, gave the parties receipts therefor and filed periodic reports with the circuit clerk, as required by statute. KRS 25.660. His records had been destroyed by a fire in January, 1959. The reports filed with the circuit clerk afforded evidence of the transactions.

In the beginning of the period involved, the defendant collected $2 in each case for himself, but soon raised the amount to $4.50. This sum had been arbitrarily fixed by himself because he had heard that justices of the peace in an adjoining county were receiving that fee. The circuit court found that the magistrate was entitled to a fee of $2.60, taxable as costs, and that any sum in excess was an illegal exaction. The court was of opinion that the county could not recover the illegal fees and was limited to a recovery of legal fees only, which, with his per diem for attending sessions of fiscal court, did not exceed collections of $5,000 a year. The implication of the court's opinion is that the many litigants who had been overcharged would have the right to recover the same individually.

■ All fees are collected by officers in their official capacity. The fees represent the charges which the state or county or municipal corporation, respectively, makes for services rendered through its officers and constitutes a fund subject to the control of the governmental unit, which, in this case, is the county. All of the fees, or portions thereof, may be given to the officer performing the service for the public. If part only is allotted the officer, the remainder is retained by the state or its subdivision. The officer is required to pay to the county the excess receipts over and above the amounts allowed for his maximum compensation and reimbursement of expenses of the office, if any. Shipp v. Bradley, 210 Ky. 51, 275 S.W. 1; Holland v. Fayette County, 240 Ky. 37, 41 S.W.2d 651; Commonwealth v. Coleman, 245 Ky. 673, 54 S.W.2d 42; Funk v. Milliken, Ky., 317 S.W.2d 499. No officer is entitled to demand or receive for the performance of his public duties more than is authorized by the law. KRS 64.410(2); Smothers v. Washington County Fiscal Court, 294 Ky. 35, 170 S.W.2d 867.

■ The appellee points out that in the above cases the fees had been legally collected, whereas this case concerns fees illegally exacted and collected. The question here, therefore, is what becomes of such fees? We hold they go to the county.

It has been held in other jurisdictions that if a justice of the peace collects fees to which the law does not entitle him, the county may not demand them of him since its title to the money cannot be better than his. 51 C.J.S. Justices of the Peace § 16. But the cases cited to sustain the text seem to involve the collection of fees for services where there were no statutes authorizing any fees at all to be collected or requiring that same be reported. Bell v. Martin, 64 Or. 519, 130 P. 1126; Richardson v. Morrison, 101 Cal.App. 418, 281 P. 726.

1. The system of compensating Justices of the Peace by fees for trying criminal cases was abolished in 1958. Ch. 81, Acts of 1958, KRS 64.255.

■ The fees presently involved were not collected by the justice in his individual capacity but were collected under authority of a statute as an officer of the county and state while acting under color of his office. The fees did not belong to him ￢ersonally. There can be no doubt that each of the defendants whom Squire Nance overcharged could recover from him the amount of the excess. KRS 64.450. Garfeim v. Stiglitz, 260 Ky. 430, 86 S.W.2d 155; Commonwealth, for Use and Benefit of Bouteiller v. Ray, 275 Ky. 758, 122 S.W.2d 750.

■ It is an old truth that one will not be permitted to profit by his own wrong. These fees were extorted in the main from travelers who resided out of the state. They were collected in the name of the state and county. It is abhorrent to say the officer should be permitted to convert the money to his own use under the claim that he has a better title than the county.

It is said in 51 C.J.S. Justices of the Peace § 23, citing State v. Cansler, 75 N.C. 442, 444, that a justice of the peace may be liable criminally for taking or demanding illegal fees. That judicial holding is in accordance with our statute which authorizes the court in which such officer serves to impose a fine for each illegal item in a bill of costs. KRS 64.460(2), (3).

It is succinctly stated in 43 Am.Jur., Public Officers, § 325, "[M]oneys collected under color of office without authority of law must usually be accounted for and paid to the public agency in whose name and by whose authority they were pretended to have been collected. This is the rule where an officer, under color of his office, has exacted fees in excess of those authorized by statute, * * *."

In Yuma County v. Wisener, 45 Ariz. 475, 46 P.2d 115, 99 A.L.R. 642, a clerk had exacted an extra fee of $2.50 from nonresident applicants for marriage licenses. When sued by the county to recover those sums, he relied on the same ground that the appellee, Nance, relies on. There, as here,

no defense of the officer's conduct was attempted. The Arizona court noted that, as in State v. Porter, 69 Neb. 203, 95 N.W. 769, the clerk, by his conduct, had compelled payment of the fees in the exercise of a power derived from the state and he would not be permitted to repudiate that fact in the action to recover the illegal exactions. The court, therefore, held the illegal fees were recoverable by Yuma Couny.

In several cases summarized in the Annotation, 99 A.L.R. 647, the question seems to have involved liability of sureties on official bonds, and they were relieved because of the illegality of the officers' acts; but in the few cases where the question of personal right of the officer to retain illegal money was involved he was held liable to the state or county. See in addition Nueces County v. Currington, Tex.Com.App., 162 S.W.2d 687; Schuylkill County v. Wiest, 257 Pa. 425, 101 A. 761; State v. Jones, for Use and Benefit of Garland County, 193 Ark. 391, 100 S.W.2d 249; State, for Use and Benefit of Garland County v. Jones, 198 Ark. 756, 131 S.W.2d 612.

Our conclusion of the whole matter is that Webster County is entitled to recover all illegal fees collected by the appellee. Money erroneously collected but under color of office constitutes a public fund. "While it belongs to those who paid it, nevertheless the state, [county] in whose name and by whose authority it was pretended to have been collected, is the proper custodian of it." 42 Am.Jur., Public Funds, § 2.

The complaint only claimed the excess over $5,000 in each year, and the court, after eliminating the illegal fees, found that the defendant had not received legal compensation in excess of the constitutional limit. Upon a return of the case, the county, if it so desires, will be permitted to amend its complaint to include all illegal fees.

The trial court declared what fees the magistrate was entitled to legally. There is yet a controversy as to whether those sums were too large or too small. We will

not undertake an accounting, leaving that to the circuit court.

The judgment is reversed for proceedings not inconsistent with this opinion.

Judgment reversed.

PALMORE, J., not sitting.