Dear Mr. Cox:
This opinion is in response to four separate opinion requests that you have made which we have consolidated here asking whether the sheriff of a second class county may retain certain fees.
With respect to all your questions, we note that § 57.380, RSMo, provides:
 The sheriff in all counties of the second class shall charge, collect and receive, on behalf of the county, every fee, penalty, charge, commission and other money that accrues to him or his office for official services rendered in civil and criminal matters, by virtue of any statute of this state, and all the fees, penalties, charges, commissions, and other money collected by him, shall at the end of each month be paid by him to the county treasurer, as provided in section 50.360, RSMo. He is not entitled to collect the per diem allowed to the sheriff as a member of the board of equalization and board of appeals, as provided in section 138.020, RSMo.
And, § 57.340, RSMo, provides:
 In all counties of the second class, the sheriff shall receive as compensation for his official services rendered in connection with civil matters, a salary of six thousand dollars per annum. This annual compensation shall be paid to the sheriff in lieu of all fees, commissions, penalties, charges and other money due to or receivable by him or his office from any source for official services rendered by him in connection with civil matters by virtue of any statute of this state.
Your first question asks:
 In a county of second-class which contains less than 100,000 inhabitants, is the compensation of the Sheriff derived from copy costs of offense reports, due the Treasurer of the county under Section 57.380.
It is our understanding that such copies are made on a photocopy machine owned by Pettis County, and that the sheriff uses the sheriff's department manpower in making the photocopies. In answering your first question, we will first set out the legal authority which must be considered in making determinations with respect to the first and subsequent questions that you pose.
In our Opinion No. 92, dated August 4, 1953, to Vogel, this office concluded that the county is entitled to money collected by the recorder under color of office and authority. We enclose a copy of that opinion, which is self-explanatory.
In Yuma County v. Wisener, 46 P.2d 115 (Ariz. 1935), the Supreme Court of Arizona held that a county could recover from a superior court clerk sums collected by the clerk as a charge for unnecessary special marriage certificates, which the clerk induced nonresident applicants to believe was required by law on the ground that the clerk obtained the money under color of office and as a fee. In Nueces County v. Currington, 162 S.W.2d 687
(Tex.Com.App. 1942), it was held by the court that a fee which was paid to a public official for performance of a statutory duty was collected by the official in his official capacity. In the court's opinion, it was stated that unless a fee is provided by law for an official service required to be performed, and the amount thereof fixed by law, none can lawfully be charged therefor. The court, however, also stated that it does not follow that a county whose official collects a fee wrongfully, but under color of office, is not entitled to have the same deposited and paid over in the same manner as is required for the disposition of fees rightfully collected.
In Webster County, Ky. v. Nance, 362 S.W.2d 723 (Ky.Ct.App. 1962), the Kentucky Court of Appeals concluded that the county was entitled to recover all illegal fees collected by the justice of the peace in traffic cases. In Parker v. Laws, 460 S.W.2d 337
(Ark. 1970), the Arkansas Supreme Court held that the proper remedy on determining that illegal court fees have been received by a deputy prosecuting attorney was to require that the fees collected be retained in the registry of the chancery court until the rightful owners had a reasonable notice and an opportunity to assert their claims; thereafter, any unclaimed balance would be paid over to the county. In Maryland Casualty Company v. McCormack, 488 S.W.2d 347
(Ky.Ct.App. 1972), the appellate court held that where a duly appointed administrator of decedent's estate pretended to have authority, as administrator, to exchange for cash a certificate of deposit which was owned solely by decedent's wife, the administrator's actions constituted "color of his office" within the meaning of the bond guaranteeing proper distribution of any money and effects which come to him by color of his office.
And, in Thomas v. Williford, 534 S.W.2d 2 (Ark. 1976), the Arkansas Supreme Court held, with dissents filed, that funds gratuitously paid by a racing corporation to a county sheriff were not funds to which the county was entitled and were not public funds for which a sheriff could be charged, and receipt by the sheriff of such funds was not in violation of the constitutional provision limiting county officers' salaries, fees and perquisites to a fixed sum per annum. In that case, the court also held that the receipt by the sheriff of a monthly expense check over and above the statutory salary and payment of all traveling expenses without proof that such checks constituted reimbursement for reasonable and necessary expenses incurred in the performance of official duties was illegal, and the sheriff was properly required to account for and repay all such sums received which were not barred by the statute of limitations.
In light of the above authorities, we believe that the answer to your first question, with respect to the money received from making photocopies, is that such money has been received under color of office and should be paid to the county.
Your second question asks:
 In a county of the second-class which contains less than 100,000 inhabitants, is the compensation of a Sheriff derived from the service of eviction papers, due the treasurer of the county under Section 57.380, Revised Statutes of Missouri, 1978.
The eviction papers to which you refer are merely private eviction notices. You also state with respect to your second question that the sheriff does not purport to be serving these papers under any statute and that it is your belief that the sheriff does not use on-duty personnel, nor does he charge the county for expenses in the service of these papers. Apparently, the sheriff and his deputies use their own vehicles for such service and do not charge mileage to the county.
It is our view under the authorities cited with respect to your first question that the sheriff does not receive these moneys by virtue of his office or under color of his office, and therefore, he does not have to pay such money to the county.
Your third question asks:
 Is the Sheriff of a second-class county, having a population less than 100,000 inhabitants, obligated to pay to the County Treasurer of said county under Section 57.380, RSMo, 1978, those funds derived from service of summonses and other process from other counties other than his own.
Under § 506.170, RSMo, all process may be served anywhere within the territorial limits of the state and may be forwarded to the sheriff of any county for the purpose of service. It thus appears that the sheriff receives such money as part of his official duties, and therefore, must pay such money to the county.
Your last question asks:
 In a county of the second class which contains less than 100,000 inhabitants, is the compensation of the sheriff who has been appointed as a special commissioner for a partition sale, pursuant to Section 528.580 Revised Statutes of Missouri, owed to the Treasurer of said county under provisions of Section 57.380
Revised Statutes of Missouri, 1978.
Under § 528.580, RSMo, every special commissioner appointed under the provisions of Chapter 528 performs the same duties and with like effect as are enjoined by Chapter 528 upon sheriffs, and in the performance of said duties is governed by the same rules applicable to sheriffs in like cases and receives a compensation for his services as may be in each case fixed by the court.
We enclose a copy of our Opinion No. 32, dated January 13, 1975, to the state auditor, in which this office concluded that sheriffs in third and fourth class counties may not be appointed as special commissioners pursuant to § 528.540, relating to partitions. In that opinion we stated that we felt that § 528.580, speaking in terms of duties "enjoined" upon sheriffs, indicates that these duties are placed primarily upon the sheriffs. And, we stated, as a corollary, we feel that ordinarily a special commissioner is appointed only when a sheriff is, for some reason, unable to perform these duties. We therefore stated that it was our view that if a sheriff is able to and does conduct a partition sale, he does so in his official capacity, and the provisions as to the limit and disposition of fees for the performance of this duty apply.
Although the sheriff apparently has acted in this case as a special commissioner and received the fees fixed by the court, it is our view that the sheriff has the duty to act under the law. He thus should not profit by his failure to perform the duties required of him by law by acting as special commissioner. Accordingly, it is our view that the money received by the sheriff for acting as special commissioner should be paid to the county.
CONCLUSION
It is the opinion of this office that money the sheriff of a second class county receives for copying offense reports, serving process from other counties, and acting as a special commissioner in partition sales should be paid to the county treasury.
The foregoing opinion, which I hereby approve, was prepared by my Assistant, John C. Klaffenbach.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosures: Att'y Gen. Op. No. 92, Vogel, 8/4/53 Att'y Gen. Op. No. 32, Ashcroft, 1/13/75